# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PRADEEP MAHAPATRA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>FUQI INTERNATIONAL, INC., ET AL.,<br><br>Defendants. | Civil Action No. 10 Civ. 2515 (DAB) |
| ROBERT M. HODGE, Individually and On Behalf of All Others Similarly Situated,<br><br>v.<br><br>Plaintiff,<br><br>FUQI INTERNATIONAL, INC., ET AL.,<br><br>Defendants. | Civil Action No. 10 Civ. 2544 (DAB) |
| THOMAS MARKEY, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>FUQI INTERNATIONAL, INC., ET AL.,<br><br>Defendants. | Civil Action No. 10 Civ. 2556 (DAB) |

(*Additional Captions Continue On Next Page*)

**REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION OF MICHAEL KORNS AND GILDA CABRAL TO CONSOLIDATE ALL RELATED ACTIONS, TO BE APPOINTED LEAD PLAINTIFF, AND FOR <u>APPROVAL OF THEIR SELECTION OF FARUQI & FARUQI, LLP AS LEAD COUNSEL</u>**

| | |
|---|---|
| CARLTON COWIE, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br>       v.<br><br>FUQI INTERNATIONAL, INC., ET AL.,<br><br>                    Defendants. | Civil Action No. 10 Civ. 2611 (DAB) |
| FUCHSBERG INVESTMENT PARTNERS, On Behalf of Itself And All Others Similarly Situated,<br><br>                    Plaintiff,<br>       v.<br><br>FUQI INTERNATIONAL, INC., ET AL.,<br><br>                    Defendants. | Civil Action No. 10 Civ. 2639 (DAB) |
| TAMY DEE THOMPSON, Individually And On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br>       v.<br><br>FUQI INTERNATIONAL, INC., ET AL.,<br><br>                    Defendants. | Civil Action No. 10 Civ. 2640 (DAB) |
| HAI RONG YANG, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br>       v.<br><br>FUQI INTERNATIONAL, INC., ET AL.,<br><br>                    Defendants. | Civil Action No. 10 Civ. 2654 (DAB) |

(*Additional Captions Continue On Next Page*)

| | |
|---|---|
| HARRY POGASH, Individually and On Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br> v.<br><br>FUQI INTERNATIONAL, INC., ET AL.,<br><br>      Defendants. | Civil Action No. 10 Civ. 2885 (DAB) |
| SIDNEY and ELAINE GLICK, Individually and On Behalf of All Others Similarly Situated,<br><br>      Plaintiffs,<br> v.<br><br>FUQI INTERNATIONAL, INC., ET AL.,<br><br>      Defendants. | Civil Action No. 10 Civ. 2007 (DAB) |
| MICHAEL D. COOPER, Individually and On Behalf of all Others Similarly Situated,<br>`<br>      Plaintiff,<br> v.<br><br>FUQI INTERNATIONAL, INC., ET AL.,<br><br>      Defendants. | Civil Action No. 10 Civ. 3024 (DAB) |


## **TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| I. | INTRODUCTION | 1 |
| II. | AGRUMENT | 1 |
|  | A. The PR Group Is Not An Appropriate Group Under The PSLRA | 1 |
|  | B. The Court Should Include The Call Option Losses Of Movant Korns | 3 |
|  | C. The Sophistication Of Korns And Cabral As Investors Does Not Render Their Claims Atypical As It Is Irrelevant In A Fraud-On-The-Market Case | 8 |
| III. | CONCLUSION | 10 |

**TABLE OF AUTHORITIES**

**Cases**                                                                                                               Page(s)

*Andrada v. Atherogenics, Inc.*,
  05 Civ. 00061, 2005 U.S. Dist. LEXIS 6777 (S.D.N.Y. April 18, 2005) .................................. 6

*In re Avon Sec. Litig.*,
  1998 U.S. Dist. LEXIS 18642, 1998 WL 834366 (S.D.N.Y. Nov. 19, 1998) ........................... 9

*In re Bank of America Corp. Sec., Derivative, and ERISA Litig.*,
  258 F.R.D. 260 (S.D.N.Y. 2009) ............................................................................................. 3

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ................................................................................................................ 9

*In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*,
  08 MDL (RWS), 2008 U.S. Dist. LEXIS 106327 (S.D.N.Y Dec. 29, 2008) ........................... 8

*Deutschman v. Beneficial Corp.*,
  132 F. R.D. 359 (D. Del. 1990) ............................................................................................... 5

*Deutschman v. Beneficial Corp.*,
  841 F.2d 502 (3d Cir. 1988) .................................................................................................... 7

*In re Donnkenny Inc. Sec. Litig.*,
  171 F.R.D. 156 (S.D.N.Y. 1997) ............................................................................................. 5

*In re Elan Corp. Sec. Litig.*,
  08 Civ. 8761, 2009 U.S. Dist. LEXIS 39859 (S.D.N.Y. May 8, 2009) .................................. 6

*Fishbury, Ltd. v. Connetics Corp.*,
  06 civ. 11496 (SWK), 2006 U.S. Dist. LEXIS 90696 (S.D.N.Y. Dec. 14, 2006) ................... 7

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
  245 F.R.D. 147 (S.D.N.Y. 2007) ............................................................................................. 9

*Freudenberg v. E*Trade Financial Corp.*,
  07 civ. 8538, 2008 U.S. Dist. LEXIS 62767 (S.D.N.Y. July 17, 2008) ................................... 5

*In re LDK Solar Sec. Litig.*,
  255 F.R.D. 519 (N.D. Cal. 2009) ............................................................................................ 5

*Loftin v. Bande*,
  574 F.3d 29 (2d Cir. 2009) ...................................................................................................... 9

*In re Orbital Sciences, Corp. Sec. Litig.*,
  188 F.R.D. 237, 239 (E.D. Va. 1999) ..................................................................................... 5

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  199 F.R.D. 119 (S.D.N.Y. 2001) ......................................................................................... 5, 7

*In re Priceline.com, Inc. Sec. Litig.*,
  236 F.R.D. 89 (D. Conn. 2006) ............................................................................................ 5, 7

*Reimer v. Ambac Fin. Group, Inc.*,
  08-cv-411 (NRB), 2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008) ............................ 3

Page(s)

*Schlanger v. Four-Phase Systems, Inc.*,
  555 F. Supp. 535 (S.D.N.Y. 1982) ................................................................................ 9

*In re Sepracor, Inc.*,
  233 F.R.D. 52 (D. Mass. 2005) .................................................................................... 5

*In re Tarragon Corp. Sec. Litig.*,
  No. 07-cv-07972, 2007 U.S. Dist. LEXIS 91418 (S.D.N.Y. Dec. 6, 2007) ................. 3

*Weikel v. Tower Semiconductor, Ltd.*,
  183 F.R.D. 377 (D.N.J. 1998) ...................................................................................... 6

**<u>Statutes, Rules & Regulations</u>**

15 U.S.C.,
  §78u-4(a)(2) .................................................................................................................. 2
  §78u-4(a)(3) .................................................................................................................. 2
  §78u-4(a)(3)(B)(iii)(II) ................................................................................................. 8

Fed. R. Civ. P.,
  Rule 6 ............................................................................................................................ 2

Local Rules,
  Rule 6.1(b) .................................................................................................................... 2

**<u>Secondary Authorities</u>**

Chicago Board Option Exchange,
  *Characteristics and Risks of Standardized Options* .................................................... 6

Elizabeth M. Sacksteder, Note,
  *Securities Regulation for a Changing Market: Option Trader Standing Under Rule 10b-5*,
  97 Yale L.J. 623 (1988) ................................................................................................ 7

*Private Causes of Action for Option Investors Under SEC Rule 10b-5:
  A Policy, Doctrinal, and Economic Analysis*,
  100 Harv. L. Rev 1959 (1987) ...................................................................................... 7

**I.      INTRODUCTION**

For its failure to provide any information about itself initially and its continued failure to provide critical information about how it will function, the PR Group is inadequate. None of its individual members have a sufficient interest in the outcome of the litigation to appoint him or her as lead plaintiff. Movants, Michael Korns ("Korns") and Gilda Cabral ("Cabral"), have the next largest financial interest in the relief sought by the Class. No precedent, law or logic counsels this Court to exclude Korns's losses from trading FUQI call options from his common stock losses or to find Korns and Cabral otherwise atypical. As such, the Court should appoint Korns and Cabral as lead plaintiffs and approve their selection of Faruqi & Faruqi LLP as lead counsel.

**II.     AGRUMENT**

**A.      The PR Group Is Not An Appropriate Group Under The PSLRA**

In its memorandum in further support of its appointment as lead plaintiff ("PR Memo"), the PR Group all but ignores its initial failure to provide this Court with fundamental information about its formation, communications among its members, and how it anticipates guiding counsel in this litigation. Rather than addressing this glaring failure, the PR Group mostly offers uncontroversial prose about groups moving for lead plaintiff. It is beyond dispute that groups are appropriate lead plaintiffs, PR Memo at 6-8, that they may not be too large and unwieldy, *id*. at 9 and that an institutional investor with the largest losses should be appointed lead plaintiff. *Id*. at 10-12.[1] Yet the PR Group focuses on those issues.

---

[1] This prose, in particular, is wasted, wholly irrelevant to the Court's determination of lead plaintiff. Congress expressed its preference for institutional investors serving as lead plaintiffs only in legislative history. The PR Group cites no case where a court selected an institutional investor with substantially less interest in the outcome of the litigation over a non-institutional investor with a larger interest. The express terms of the Exchange Act's lead plaintiff provisions do not permit such a preference, completely omitting any reference to institutional investors as preferred lead plaintiffs. *See* 15 U.S.C. §78u-4(a)(2)-(3). More, this argument is thick with irony as PGERS, a
*(footnote continued...)*

The PR Group, however, has failed to address the arguments Korns and Cabral raised in their opposition memorandum against its appointment.[2] While Korns and Cabral will not repeat their opposition memorandum herein in its entirety, several key points are important.

To cure its failure to provide this Court with basic information about itself as a group, the PR Memo includes a joint declaration of its members.[3] Long on conclusory statements, the joint declaration is short on crucial facts: it is completely silent as to (1) when the PR Group members actually met, (2) how these unrelated parties composed their group and who, other than the lawyers, will lead it, and (3) whether the members of the group even knew of each other or the group's existence before counsel filed the PR Group's motion for appointment as lead plaintiff.

With knowledge of Korns's and Cabral's raising its failure to provide that information anywhere in its initial filing, the PR Group's failure to include such facts in the joint declaration is glaring. From these facts, the most plausible inferences are (1) that the PR Group did not meet until after it filed its motion for appointment as lead plaintiff; (2) its lawyers cobbled together the group with no input from its members; and (3) the members of the PR Group neither knew of each other's existence nor that counsel was filing a motion for appointment as lead plaintiff on behalf of the group. The joint declaration – raising more serious questions than it answers – cures none of the glaring deficiencies it the PR Group's initial filing.

---

*(…footnote continued)*
member of the PR Group, has combined with unrelated investors, each of whose interest in the outcome of the litigation surpasses its own.

[2] Korns and Cabral served their opposition memorandum electronically on June 1, 2010, three days prior to the PR Group's June 4, 2010 filing of the PR Memo. The PR Group, therefore, was aware of the arguments against its appointment in plenty of time to address those arguments in its PR Memo. More, under Fed. R. Civ. P. 6 and Local R. 6.1(b), the deadline for the PR Group and Ovitt to file reply memoranda was Friday, June 11, 2010 (seven days from June 1, 2010 plus three days for mailing). This Court should strike any reply memorandum filed by the PR Group and/or Ovitt as untimely.

[3] Tellingly, the PR Group members executed the joint declaration in parts on June 3 and June 4, 2010, fifteen days after the PR Group moved for appointment as lead plaintiff and two days after it possessed the opposition memorandum of Korns and Cabral.

Further, the PR Group wrongly relies upon the *Bank of America* and *Reimer* cases,[4] to establish the sufficiency of its belated declaration, unable to distinguish Korns's and Cabral's citation to *In re Tarragon Corp. Sec. Litig.*, No. 07-cv-07972, 2007 U.S. Dist. LEXIS 91418, at *6 (S.D.N.Y. Dec. 6, 2007) (rejecting groups where evidence of independent existence, prior relationship was wholly lacking). *Reimer*, however, does not support the PR Group because in that case the "U.S. Public Pension Funds" group appended its joint declaration ***to its initial motion and not to its opposition or reply brief***.[5]

It is indisputable that the PR Group was required to submit a joint declaration with its initial motion, reciting certain fundamental details about itself. It is indisputable that it was required to have included the most basic information about how and when the group was formed and when its members communicated with each other. It is indisputable that the PR Group failed to submit such a declaration and failed to include the requisite information in the joint declaration it belatedly filed with its opposition memorandum. Because of the PR Group's initial and continuing failure to provide essential information about itself, this Court should deny its motion for appointment as lead plaintiff.

**B.**     <u>**The Court Should Include The Call Option Losses Of Movant Korns**</u>

In his memorandum of law in further support ("Ovitt Memo"), Ovitt claims that he is the Class member with the largest financial interest, asserting that this Court should exclude from Korns's losses in FUQI common stock the losses he sustained trading call options. Ovitt insists

---

[4] *In re Bank of America Corp. Sec., Derivative, and ERISA Litig.*, 258 F.R.D. 260 (S.D.N.Y. 2009); *Reimer v. Ambac Fin. Group, Inc.*, 08-cv-411 (NRB), 2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008).

[5] *See* Declaration of Antonio Vozzolo in Support of Korns and Cabral Reply ("Vozzolo Decl.") ¶ 2, Ex. A. Korns and Cabral were unable to obtain the joint declaration movant the "Public Pension Funds" group filed in *In re Bank of America*. Given that counsel to the Public Pension Funds was the same as counsel to the U.S. Public Pension Funds in *Reimer*, it is highly likely, and no evidence in the court's opinion contradicts, that the Public Pension Funds submitted a similar joint declaration to the one in *Reimer* with its opening motion. The *Bank of America* opinion, too, therefore, offers no support for the PR Group.

3

that because no filed complaint expressly includes option purchasers in the Class definition and no notice informed option purchasers of their right to move for leadership, the Court should exclude call options from Korns's losses. Not satisfied with this wholly unsupported theory – Ovitt cites no case, excluding call option losses from the determination of a lead plaintiff movants losses – Ovitt asserts that options purchasers do not have standing in an action pursuant to Rule 10b-5 and option purchasers' are atypical of those of the class. Ovitt is wrong.

Ovitt misperceives facts about the first filed Mahapatra complaint. As he acknowledges, the Mahapatra complaint includes "all those who purchased Fuqi's securities." Ovitt Memo at 8. Mahapatra did not plead securities *issued by* FUQI, but "Fuqi's securities." Mahapatra and his counsel must have meant to include options because FUQI had only common stock issued, outstanding and publicly traded during the Class Period.[6] "Fuqi's securities," therefore, must include call options. More, having only purchased common stock, by pleading "securities," Mahapatra and his counsel must have been trying to cast as wide a net as possible. As a matter of fact, therefore, this Court can only reasonably infer that Mahapatra meant to include options purchases on FUQI common stock within his Class. Korns's options losses, therefore, are already part of the Class and should be counted.[7]

---

[6] In FUQI's Annual Report on Form 10-K for the period ended December 31, 2008, filed with the SEC on March 31, 2009, FUQI only mentioned common stock at issued, outstanding and trading. http://www.sec.gov/Archives/edgar/data/1382696/000114420409017778/v144435_10k.htm. Subsequently, it filed a shelf registration statement to issue up to $100 million of common stock, preferred stock, warrants, debt and warrants. During the Class Period, however, FUQI issued only more common stock and no other security. http://www.sec.gov/Archives/edgar/data/1382696/000114420409039860/v156082_8k.htm. Thus, FUQI's only issued, outstanding and trading security was common stock.

[7] Ovitt chides counsel to Korns and Cabral for the class definition in the *Markey* case, limited as it was to common stock. Ovitt Memo at 8. Plaintiff Markey had standing to bring claims only on behalf of common stock purchasers, having purchased no options. Thus, that definition was proper under the circumstances. Why plaintiff Mahapatra chose the class definition he did is irrelevant to this inquiry; it is only important that he chose it. More, Ovitt's attempt to disprove causation on behalf of call options purchasers, *id*. (complaints allege only decline in FUQI shares), is unavailing as it is premature and factually inaccurate – the price of the call options Korns purchased fell precipitously in response to defendants' March 16, 2010 disclosure. *See* Vozzolo Decl. ¶ 3.

4

Ovitt's arguments fail, too, as a matter of law.  Directly contrary to Ovitt's arguments, courts have included losses related to options purchases in lead plaintiffs' loss calculations.  In *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156 (S.D.N.Y. 1997), Judge Cedarbaum appointed a lead plaintiff who had purchased both common stock and call and put options, including in its loss calculation its losses from all three securities and finding the plaintiff adequate, its claims typical.  *Id.* at 158; *see also Freudenberg v. E*Trade Financial Corp.*, 07 civ. 8538, 2008 U.S. Dist. LEXIS 62767 (S.D.N.Y. July 17, 2008)*; Deutschman v. Beneficial Corp.*, 132 F. R.D. 359 (D. Del. 1990) (appointing lead plaintiff who purchased only call options to represent class of purchasers of call options and common stock).

This ruling holds true in the class certification context as well.  In *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519 (N.D. Cal. 2009), the court certified a class, *id.* at 533, over defendants' objections to the representative plaintiffs adequacy and the typicality of his claims.  *Id.* at 532.  The court ruled that notwithstanding the proposed representative's sales of call options, because his overall financial interest was aligned with the class, his "net long" position rendered him adequate, his claims typical.  *Id.* at 533; *see also In re Priceline.com, Inc. Sec. Litig.*, 236 F.R.D. 89, 98-100 (D. Conn. 2006) (holding that because interests of proposed representative were aligned with those of class, purchaser and seller of put options was appropriate class representative); *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 123-24 (S.D.N.Y. 2001) (finding market makers in options appropriate class representatives where false information pollutes markets and all types of investors suffer damages); *In re Sepracor, Inc.*, 233 F.R.D. 52, 56 (D. Mass. 2005) (appointing purchaser of options as lead plaintiff for class that included purchasers of all defendant company's equities); *see also In re Orbital Sciences, Corp. Sec. Litig.*, 188 F.R.D. 237, 239 (E.D. Va. 1999) (consolidating stock and option holder cases

because of their "similar interest in recovering from the Defendants" and finding that while damages may differ no prejudice would ensue) .

Ovitt cites no case where a court rejected a movant seeking appointment as lead plaintiff or certification as a class representative who purchased both options and common stock.  For example, in *In re Elan Corp. Sec. Litig*., 08 Civ. 8761, 2009 U.S. Dist. LEXIS 39859 (S.D.N.Y. May 8, 2009), Judge Hellerstein appointed a movant with a larger financial loss.  *Id*. at *4-5.  In dictum, the court opined that a movant whom he had already rejected was atypical because he "traded ***exclusively*** in call options, not common stock or ADRs."  *Id*. at *6 (emphasis added); *see also Andrada v. Atherogenics, Inc.*, 05 Civ. 00061, 2005 U.S. Dist. LEXIS 6777 (S.D.N.Y. April 18, 2005) (rejected movant who "***only*** purchased call options and not any of the underlying . . . common stock that most putative class members purchased").[8]

More, Ovitt's counsel attempt to raise a standing issue for options purchasers must fail. While it is indisputable that pricing call options depends on more than the underlying stock price, according to the Chicago Board Options Exchange ("CBOE"), stock price is most critical.  The CBOE urges investors to read an online pamphlet, *Characteristics and Risks of Standardized Options* before engaging in options trades.[9]  That pamphlet states, "an option holder must not only be right about the <u>direction</u> of an anticipated price change in the underlying interest, but he

---

[8] *Weikel v. Tower Semiconductor, Ltd*., 183 F.R.D. 377 (D.N.J. 1998) is similarly unavailing.  In *Weikel*, the court had already appointed a purchaser of a unique "Euro Option" as lead plaintiff.  *Id*. at 382.  At the class certification stage, however, the Court found that Euro Options were not openly traded and no evidence existed that anyone other than the lead plaintiff had purchased the option.  *Id*. at 391.  In holding that the lead plaintiff should not continue to serve as a class representative, the court relied on the fact that the Euro Options were neither shown to be purchased by anyone other than the lead plaintiff nor shown to have been openly traded.  *Id*.  For that reason, the Court saw no reason to let issues related to the Euro Options dominate the proceedings.  *Id*.

[9] *See* http://www.cboe.com/Resources/Intro.aspx.  CBOE states, "[o]ptions involve risk and are not suitable for all investors.  Prior to buying or selling an option, a person ***must*** receive a copy of Characteristics and Risks of Standardized Options (ODD)."  (Emphasis added).

must also be right about <u>when</u> the price change will occur."[10]  Thus, while various risk factors in addition to price contribute to pricing a FUQI call option, the primary factor is the price of the underlying common stock and the direction investors such as Korns believe the stock will move. Indeed, the pamphlet further states that "<u>[t]he more the option is out of the money and the shorter the remaining time to expiration, the greater the risk that an option holder will lose all or part of his investment in the option</u>."[11]  This is uncontroversial, tying as it does the risk of gain or loss on the purchase of FUQI call options directly to the price of the underlying FUQI common stock.

Given CBOE's words, it is hardly surprising that the standing of a call option purchaser is no longer in doubt.  *See Oxford*, 199 F.R.D. at 124 (fraud affects all types of investors); *Deutschman v. Beneficial Corp.*, 841 F.2d 502, 506-507 (3d Cir. 1988) (in affirmative misrepresentation case, neither Supreme Court nor Court of Appeals has ever required a transactional nexus between issuer and securities purchaser).[12]  More, it is hardly controversial that a lead plaintiff who purchases one type of security must be able to lead a litigation representing the purchasers of different securities.  *See*, *e.g*., Vozzolo Decl., ¶ 5 (Bernstein firm includes call options in class of securities holders); *Fishbury, Ltd. v. Connetics Corp.*, 06 civ. 11496 (SWK), 2006 U.S. Dist. LEXIS 90696, at *12-14 (S.D.N.Y. Dec. 14, 2006) (movant who purchased one security can serve as lead plaintiff of a class of persons who purchased other securities); *In re Priceline.com*, 236 F.R.D. at 100 (interests of options purchaser aligned with common stock purchasers such that options purchaser can represent class of common stock purchasers).

---

[10] http://www.optionsclearing.com/components/docs/riskstoc.pdf at 61 of 163 (Emphasis in original).

[11] http://www.optionsclearing.com/components/docs/riskstoc.pdf, at 62 of 163 (Emphasis in original).

[12] *See also* Note, *Private Causes of Action for Option Investors Under SEC Rule 10b-5: A Policy, Doctrinal, and Economic Analysis*, 100 Harv. L. Rev 1959 (1987); Elizabeth M. Sacksteder, Note, *Securities Regulation for a Changing Market: Option Trader Standing Under Rule 10b-5*, 97 Yale L.J. 623 (1988).

7

As such, this Court should not exclude Korns's losses in call options. Because their losses in both common stock and call options give Korns and Cabral the largest financial interest in the relief sought by the Class, they are the presumptive lead plaintiffs.

### C. The Sophistication Of Korns And Cabral As Investors Does Not Render Their Claims Atypical As It Is Irrelevant In A Fraud-On-The-Market Case

Without any legal or factual support, the PR Group asserts that Korns and Cabral are atypical because their "trading in Fuqi securities appears to be based on an artificial intelligence . . . model that does not appear to trade based on information about Fuqi alone, but also other securities." PR Memo at 14. The PR Group argues, tacitly, that Korns and Cabral somehow cannot rely on the fraud on the market presumption. This baseless accusation is grounded in neither law nor fact.

As an initial matter, the PR Group argues, "whether or not this basis of trading could meet the typicality standard is not the issue." PR Memo at 14. Rather it argues that at class certification, Korns and Cabral may face unique defenses. *Id*. It offers no legal support for this proposition because it cannot. This is so because at the lead plaintiff stage, a prospective lead plaintiff is only required to show preliminarily that it meets Rule 23's adequacy and typicality requirements. *In re Bear Stearns Cos. Sec., Derivative & ERISA Litig*., 08 MDL (RWS), 2008 U.S. Dist. LEXIS 106327, at *28 (S.D.N.Y Dec. 29, 2008). Even in raising the issue, therefore, the PR Group concedes that at this stage, it is not an issue at all. More, the Exchange Act, itself, requires "proof" that Korns and Cabral cannot adequately represent the Class. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). The PR Group has offered none.

Even if this Court entertains the issue of the relationship of Korns's and Cabral's "trading model" at the lead plaintiff stage, in a fraud-on-the-market case such as this one, the reasons an investor purchases a security can virtually never disturb a finding that its claims are typical of the

8

class.[13]  Indeed, the sophistication of an investor does not preclude it from relying on the integrity of the market and asserting the fraud-on-the-market presumption.  "[A] plaintiff's sophistication as an investor generally is irrelevant to whether or not his claims are typical of the class where subjective reliance is not an issue in the case." *In re Flag Telecom Holdings Ltd. Sec. Litig.*, 245 F.R.D. 147, 164 (S.D.N.Y. 2007), *vacated, in part, on other grounds, sub nom Loftin v. Bande*, 574 F.3d 29 (2d Cir. 2009) (citing *In re Avon Sec. Litig.*, 1998 U.S. Dist. LEXIS 18642, 1998 WL 834366 *8 (S.D.N.Y. Nov. 19, 1998) (collecting cases)).  Regardless of any trading system, therefore, it is axiomatic that unless proof exists that an investor did not rely on the price paid as reflecting all available, material information, its claims are typical of the class.  No such proof exists in this case.

On the contrary, the claims of Korns and Cabral are typical of the class.  According to Korns, he and Cabral pursue a balanced mutual fund style investment strategy.  Declaration of Michael Korns, ¶ 5, attached as Ex. C to the Vozzolo Decl.  Such data driven systems are "extremely sensitive to inaccurate or misleading data," in particular to false or misleading sales and earnings data.  *Id.* at ¶¶5-6.  As Korns stated, he and Cabral invested "in FUQI because of its superb reported earnings and sales growth." *Id.* at ¶6.  At this stage, therefore, the claims of Korns and Cabral must be seen as typical of the Class.

Thus, the PR Group's assertion that this Court should visit the typicality of Korns and Cabral at this stage is baseless.  Korns and Cabral are adequately Class representatives, their claims typical of those of the Class.

---

[13] As the Supreme Court quoted favorably, "'it is hard to imagine that there ever is a buyer or seller who does not rely on market integrity. Who would knowingly roll the dice in a crooked crap game?'" *Basic Inc. v. Levinson*, 485 U.S. 224, 246-247 (1988) (quoting *Schlanger v. Four-Phase Systems, Inc.*, 555 F. Supp. 535, 538 (S.D.N.Y. 1982)).

## III.     CONCLUSION

For the foregoing additional reasons, this Court should appoint Korns and Cabral as lead plaintiffs, approve their selection of Faruqi & Faruqi, LLP as lead counsel and deny all other motions for appointment as lead plaintiff.

Dated: June 14, 2010                              Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:     s/Antonio Vozzolo
      Antonio Vozzolo (AV-8773)
Richard Schwartz
369 Lexington Avenue, 10th Floor
New York, New York 10017
Telephone:   (212) 983-9330
Facsimile:    (212) 893-9331
Email:   avozzolo@faruqilaw.com
      rschwartz@faruqilaw.com

*-and-*

Jacob A. Goldberg
101 Greenwood Avenue, Suite 600
Jenkintown, PA  19046
Telephone:   (215) 277-5770
Facsimile:    (215) 277-5771
Email:   jgoldberg@faruqilaw.com

*Proposed Lead Counsel*

**CERTIFICATE OF SERVICE**

      I, hereby certify that on June 14, 2010, I electronically filed the following:

(i)    REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION OF MICHAEL KORNS AND GILDA CABRAL TO CONSOLIDATE ALL RELATED ACTIONS, TO BE APPOINTED LEAD PLAINTIFF, AND FOR APPROVAL OF THEIR SELECTION OF FARUQI & FARUQI, LLP AS LEAD COUNSEL; and

(ii)   DECLARATION OF ANTONIO VOZZOLO IN SUPPORT OF REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF MICHAEL KORNS AND GILDA CABRAL TO CONSOLIDATE ALL RELATED ACTIONS, TO BE APPOINTED LEAD PLAINTIFF, AND FOR APPROVAL OF THEIR SELECTION OF FARUQI & FARUQI, LLP AS LEAD COUNSEL

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF, and service was accomplished on any of the counsel of record not registered through the CM/ECF system via regular U.S. mail.

                                               s/Antonio Vozzolo
                                               ANTONIO VOZZOLO