**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

IN RE FUQI INTERNATIONAL, INC.        :       10 Civ. 2515 (DAB)
SECURITIES LITIGATION               :

-------------------------------------------------------------------X     ECF Case

This Document Relates To:            :
All Actions                        :

-------------------------------------------------------------------X

RECEIVED FEB 15 2011 U.S.D.C. S.D.N.Y. CASHIERS

## CONSOLIDATED CLASS ACTION COMPLAINT

Lead Plaintiff, the PR Group ("Plaintiff"), alleges the following based upon the investigation of its counsel, which included, among other things: a review of the Defendants' public documents, media reports, United States Securities and Exchange Commission ("SEC") filings, wire and press releases regarding Fuqi International, Inc. ("Fuqi" or the "Company"), securities analysts' reports and advisories about the Company, and information readily available on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a federal class action on behalf of purchasers (the "Class") of the common stock of Fuqi, who purchased or otherwise acquired the Company's common stock between May 15, 2009 and March 16, 2010, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder. This action is also being brought on behalf of a Subclass (the "Subclass") consisting of all persons or entities who purchased or otherwise

acquired stock pursuant or traceable to the Company's July 31, 2009 stock offering, which was priced on July 31, 2009 and closed on August 5, 2009 (the "Secondary Offering" or the "Offering"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").  The claims brought pursuant to the Securities Act are separate from the claims brought pursuant to the Exchange Act and are brought against different Defendants, asserting different allegations from those asserted in connection with the Exchange Act claims.

2.      Fuqi is a designer of high quality precious metal jewelry in China, developing, promoting, and selling a broad range of products to the luxury goods market in China.  The Company's products consist of a range of unique styles and designs made from gold and other precious metals such as platinum and Karat gold (K-gold).  The Company also produces jewelry items that contain diamonds and other precious stones on a custom-order basis.

3.      During the first three quarters of 2009, Fuqi reported significant financial growth and increased profitability.  For example, the Company boasted increases in gross profits as a percentage of revenues of 5.15%, 6.60%, and 11.8% for the quarters ended March 31, 2009, June 30, 2009, and September 30, 2009, respectively.  Likewise, Fuqi reported increases in net income as a percentage of revenues of 0.59%, 1.93%, and 7.80% for the same periods.

4.      Based on the Company's financial performance, various analysts and market commentators repeatedly touted the Company's stock as one of "5 Stocks Approaching Greatness" and one of "China's Undiscovered Gems."  As a consequence of Fuqi's publicly reported financial success, the price of the Company's common stock

2

rose dramatically during the Class Period.   For example, on May 15, 2009, the Company's common stock closed at $7.61 per share.   During the Class Period, Fuqi's stock closed as high as $31.86 per share.

5.     On July 22, 2009, Fuqi's Secondary Offering was declared effective by the SEC in which it was to sell 4,855,000 shares of common stock at a price of $21.50 per share, raising more than $104.3 million.   The Underwriters (defined below) exercised their over-allotment and purchased and sold an addition 726,395 shares at $21.50 per share for total proceeds to Fuqi of approximately $112.4 million.

6.     Unbeknownst to the investing public, and contrary to the Company's Class Period representations, Fuqi suffered from inadequate internal financial controls that caused the Company to report materially false financial results during the Class Period.   As a result, the Company shocked the market when, on March 16, 2010, it announced that it was conducting an internal assessment of its internal controls as of December 31, 2009; that it was unable to timely file its annual report for 2009 with the SEC due to certain accounting errors caused by a material weakness in its internal controls during 2009; and that investors should no longer rely upon the Company's previously issued financial statements for the periods ending March 31, 2009, June 30, 2009, and September 30, 2009.

7.     On this news, shares of the Company's stock declined more than 35%, from a close of $19.00 per share on March 16, 2010, prior to announcement of the Company's accounting errors and internal control deficiencies, to a close of $11.90 per share on March 17, 2010, the first full trading day after announcement, on extremely heavy trading volume.   Plaintiff and the other members of the Class who purchased

shares of Fuqi common stock at prices artificially inflated by the Fuqi Defendants' (as defined below) materially false and misleading Class Period statements, and in ignorance of the falsity of those statements, were damaged thereby.

8.    In addition, members of the Subclass who purchased Fuqi common stock pursuant to the materially false Registration Statement, and Prospectus incorporated therein, issued in connection with the Secondary Offering, were damaged thereby.

## JURISDICTION AND VENUE

9.    The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l(a)(2) and 77o), and under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

10.    This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v), Section 27 of the Exchange Act (15 U.S.C. § 78aa), and 28 U.S.C. § 1331.

11.    Venue is proper in this Judicial District pursuant to Section 22 of the Securities Act and pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).    Additionally, the Company's Secondary Offering was actively marketed in this Judicial District.

12.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13.     The members of Lead Plaintiff PR Group (the Puerto Rico Government Employees and Judiciary Retirement Systems Administration, Craig B. Laub, J.D. Pisut and Sandra Redfern) purchased Fuqi common stock at artificially inflated prices during the Class Period and have been damaged thereby.  PR Group member, the Puerto Rico Government Employees and Judiciary Retirement Systems Administration, also purchased Fuqi common stock in the Secondary Offering pursuant to a Registration Statement containing materially false and misleading statements, and was damaged thereby.

14.     Defendant Fuqi International, Inc. is a Delaware corporation with its principal executive office located at 5/F, Block 1, Shi Hua Industrial Zone, Cui Zhu Road North Shenzhen, 518019, People's Republic of China.  The Company's common stock trades on the NASDAQ Stock Exchange. Fuqi operates through its wholly-owned subsidiary, Fuqi International Holdings Co., Ltd., a British Virgin Islands corporation ("Fuqi BVI") and its wholly-owned subsidiary, Shenzhen Fuqi Jewelry Co., Ltd., a company established under the laws of China ("Fuqi China").

15.     Defendant Yu Kwai Chong ("Chong") was, at all relevant times, President, Chief Executive Officer, Chairman of the Board, and majority shareholder of Fuqi.  According to the Company's 2009 Proxy Statement, filed with the SEC on Schedule 14A on April 30, 2009 (the "2009 Proxy Statement"), Defendant Chong is the principal founder of the Company and is involved in Fuqi's day-to-day operations with responsibility for the strategic planning, marketing and overall growth of the Company. Defendant Chong signed the Company's interim reports for the periods ending March 31,

2009, June 30, 2009, and September 30, 2009, filed with the SEC on Forms 10-Q, as well as the Company's certifications of compliance with the requirements of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley") for the same periods. As a director of the Company, Defendant Chong signed the Company's Registration Statement filed with the SEC on June 24, 2009 on Form S-3 and declared effective on that same date, pursuant to which the Secondary Offering was conducted (the "Registration Statement")

16.    Defendant Ching Wan Wong ("Wong") was, at all relevant times, Chief Financial Officer and a director of Fuqi.  Defendant Wong is a Certified Practicing Accountant in Australia, a Certified Public Accountant ("CPA") in Hong Kong, and a Certified General Accountant in Canada.  According to the 2009 Proxy Statement, Defendant Wong is experienced in international financial reporting and management. Defendant Wong signed the Company's interim reports for the periods ending March 31, 2009, June 30, 2009, and September 30, 2009, filed with the SEC on Forms 10-Q, as well as the Company's certifications of compliance with the requirements of the Sarbanes-Oxley for the same periods.  Defendant Wong signed the Registration Statement as a director of the Company.

17.    Defendant Lie Xi Zhuang ("Zhuang") was, at all relevant times, Chief Operating Officer and a director of Fuqi.  According to the 2009 Proxy Statement, Defendant Zhuang is a co-founder of the Company, has served as Chief Operating Officer since April 2001, and is responsible for production management and cost control. Defendant Zhuang signed the Registration Statement as a director of the Company. Defendants Chong, Wong and Zhuang are referred to collectively herein as the "Officer

Defendants" and defendants Fuqi, Chong, Wong and Zhuang are referred to collectively herein as the "Fuqi Defendants."

18.     Defendant Eileen B. Brody ("Brody") was, at all relevant times, a director of Fuqi and member of the Fuqi Board of Directors' Audit Committee (the "Audit Committee").  According to the Company's 2009 Proxy Statement, from 1983 to 1990, Defendant Brody worked for KPMG Peat Marwick in various positions including as a Senior Manager, and was responsible for audit services for a diverse clientele of large Fortune 500 companies, as well as small publicly traded companies, providing due diligence services on a wide variety of acquisitions.  Defendant Brody is a CPA. Defendant Brody signed the Registration Statement as a director of the Company.

19.     Defendant Victor A. Hollander ("Hollander") was, at all relevant times, a director of Fuqi and member of the Audit Committee.  According to the 2009 Proxy Statement, Defendant Hollander is a CPA, and while employed at Brout & Company, was the audit partner for many public companies listed on the New York Stock Exchange and the American Stock Exchange.  According to the 2009 Proxy Statement, Defendant Hollander has served on the Securities, Ethics and Accounting and Auditing Committees of various organizations, including the American Institute of Certified Public Accountants and California State Society of Certified Public Accountants, as well as having served as a director, including as Chair of the audit committee, of several SEC reporting companies. Defendant Hollander signed the Registration Statement as a director of the Company.

20. Defendant Jeff Haiyong Liu ("Liu") was, at all relevant times, a director of Fuqi and member of the Audit Committee. Defendant Liu signed the Registration Statement as a director of the Company.

21. Defendant Lily Lee Chen ("Chen") was, at all relevant times, a director of Fuqi. Defendant Chen signed the Registration Statement as a director of the Company.

22. Defendants Chong, Wong, Zhuang, Brody, Hollander, Liu, and Chen are collectively referred to herein as the "Director Defendants."

23. Defendant William Blair & Co. ("William Blair") is an investment firm offering investment banking services that maintains offices at 666 5th Avenue, New York, New York, within this District. William Blair was an underwriter and Sole Book-Running Manager for the Secondary Offering.

24. Defendant Oppenheimer & Co. Inc. ("Oppenheimer") is an investment firm offering investment banking services that maintains offices at 125 Broad Street, 14th Floor, New York, New York, within this District. Defendant Oppenheimer was an underwriter and Co-Lead Manager in the Secondary Offering.

25. Defendant Cowen and Company, LLC ("Cowan") is an investment firm offering investment banking services that maintains offices at 1221 Avenue of the Americas, New York, New York, within this District. Defendant Cowan was an underwriter and Co-Lead Manager in the Secondary Offering.

26. Defendants William Blair, Oppenheimer, and Cowan are collectively referred to herein as the "Underwriter Defendants." The Underwriter Defendants served

as underwriters and financial advisors for, and assisted in the preparation of, the Secondary Offering.

## PLAINTIFF'S CLASS AND SUBCLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Fuqi common stock between May 15, 2009 and March 16, 2010, inclusive, seeking to pursue remedies under the Exchange Act.  Excluded are defendants, any entity in which defendants have a controlling interest or is a parent or subsidiary of, or is controlled by, the Company, and the officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors, and assigns of defendants. Plaintiff also brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Subclass, consisting of all those who purchased or otherwise acquired Fuqi common stock pursuant or traceable to the Secondary Offering, seeking to pursue remedies under the Securities Act.  Excluded are defendants, any entity in which defendants have a controlling interest or is a parent or subsidiary of, or is controlled by, the Company, and the officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors, and assigns of defendants.

28.     The members of the Class are so numerous that joinder of all members is impracticable.  There were 22,005,509 shares of common stock outstanding as of March 31, 2009.  The members of the Subclass are also so numerous that joinder of all members is impracticable.  There were 4,855,000 shares of common stock sold in the Secondary Offering.  While the exact number of Class and Subclass members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff

believes that there are hundreds or thousands of members in the proposed Class and in the Subclass.  Record owners and other members of the Class and Subclass may be identified from records maintained by Fuqi or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

29.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.  Plaintiff's claims are also typical of the claims of the members of the Subclass as all members of the Subclass are similarly affected by Defendants' wrongful conduct applicable to the Subclass in violation of federal law that is complained of herein.

30.     Plaintiff will fairly and adequately protect the interests of the members of the Class and the Subclass and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to, or in conflict with, those of the Class or the Subclass.

31.     Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions solely affecting individual members of the Class or the Subclass. Among the questions of law and fact common to the Class and Subclass are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by the Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and financial results of Fuqi; and

(c)     to what extent the members of the Class and Subclass have sustained damages and the proper measure of damages.

32.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class or Subclass members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class or Subclass to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## BACKGROUND

33.     In its annual report for 2008, filed with the SEC on Form 10-K on March 31, 2009 (the "2008 10-K"), Fuqi described itself as:

> a leading designer of high quality precious metal jewelry in China, developing, promoting, and selling a broad range of products to the luxury goods market in China. Our products consist of a range of unique styles and designs made from gold and other precious metals such as platinum and Karat gold (K-gold).  We also produce jewelry items that contain diamonds and other precious stones on a custom-order basis. Our design database presently contains over 30,000 unique products. We continuously innovate and change our designs based upon consumer trends in China. By continuously creating new designs and rapidly bringing them to market, we believe we are able to differentiate ourselves from our competitors and strengthen our brand identity.

34.     In the 2008 10-K, Fuqi reported that 97% of its revenues in 2008 was attributable to sales to the wholesale market, but that the Company was expanding into

the retail market.  The Company reported that it believed such expansion would enable it to, among other things, grow its revenue base and improve net margins from higher markups in the retail market.  The Company further explained that the opportunity to expand into the retail market was a consequence of the expansion of China's market for jewelry and other luxury goods due, in part, to the country's rapid economic growth. According to Fuqi's 2008 10-K, economic growth in China had led to greater levels of personal disposable income and increased spending among China's expanding middle-class consumer base.  The Company stated:

> China—with its 1.3 billion consumers, higher minimum wages, expanded welfare payments, and reduced income taxes—is the world's third-largest consumer of luxury goods.  China's younger generations, in particular, have bought into consumerism more than their predecessors and been lured by flashy products and high-end merchandise marketed to the wealthy, upper-middle and middle-market consumers.  The jewelry industry in China has grown at an annual rate of approximately 10 percent since the 1980's and is expected to be the largest market in the world by 2010.  In 2005, domestic sales of jewelry in China amounted to RMB 140 billion, which is approximately US$19.8 billion, and the industry earned $5.49 billion worth of foreign exchange for China through exports.  In 2008, the growth in China's jewelry industry was higher than its general economic growth. As a result, China became the second largest gold consumer and the largest platinum jewelry market in the world.

### SUBSTANTIVE ALLEGATIONS

### A.   The Company's First Quarter 2009 Results

35.   On May 15, 2009, Fuqi filed its quarterly report for the three month period ending March 31, 2009 (the "1Q 2009 10-Q") with the SEC.  In that Form 10-Q, Fuqi reported, *inter alia*, Cost of Sales of $82,632,955 (wholesale) and  $8,675,689 (retail) for the first quarter 2009; gross profit of $18,051,366 (compared to $8,811,375 for the same period in 2008); and net income of $9,660,499 (compared to $6,395,073 in 2008).  The 1Q 2009 10-Q was signed by Defendants Chong and Wong.

36.     Attached as exhibits to the 1Q 2009 10-Q were the certifications of Defendants Chong and Wong made pursuant to § 302(a) of Sarbanes-Oxley, in which they each certified:

1.     I have reviewed this report on Form 10-Q of Fuqi International, Inc.;

2.     Based on my knowledge, *this report does not contain any untrue statement of a material fact* or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     *Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition*, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.     The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a. designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b. *designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles*;

c. evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d. disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most

recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.     The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

   a. All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

   b. Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.[1]

37.     In addition, attached to the 1Q 2009 10-Q was the Certification of Chief Executive Officer and Chief Financial Officer pursuant to § 906 of the Sarbanes-Oxley, executed by Defendants Chong and Wong, which, in pertinent part, provides that "[t]he information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company."

**B.     The Offering**

38.     On July 31, 2009, the Company filed a Final Prospectus Supplement with the SEC, on Form 424B5 (the "Prospectus"), to sell 4,855,000 shares of Fuqi common stock at a price of $21.50 per share, pursuant to the Registration Statement. The Secondary Offering also provided for an over-allotment of 726,395 shares, which the Underwriter Defendants exercised at a price of $21.50 per share.

---

[1]     Unless otherwise indicated, all emphasis is added.

14

39.     In the Prospectus, the Company reported summary financial data for the first quarter, ending March 31, 2009.  In that summary financial data, Fuqi reported cost of sales of $91,309,000; gross profit of $18,051,000; and net income of $9,660,000 for the first quarter of 2009.  In addition, the Prospectus expressly incorporated by reference the Company's 1Q 2009 10-Q.

40.     The cost of sales, gross profit and net income results for the first quarter of 2009 reported in the Prospectus were materially false and misleading because the Company's internal controls were inadequate, resulting in accounting errors relating to inventory and costs of sales during the quarter.  The material deficiencies in Fuqi's internal controls caused the Company's cost of sales to be materially understated and the reported gross profit and net income to be materially overstated.

41.     As the Company would subsequently disclose on March 16, 2010, the Company's previously issued financial statements for the three months ended March 31, 2009, which were summarized in the Prospectus, and the 1Q 2009 10-Q, which was incorporated by reference into the Prospectus "should not be relied upon due to an error in the accounting of inventory and cost of sales."  On the disclosure of this news, the price of Fuqi's common stock decreased by approximately 35%, as described below

42.     Fuqi's announcement constitutes an admission that the Company's previously issued financial statements were false. SFAS No. 154, *Accounting Changes and Error Corrections*, and Accounting Principles Board Opinion No. 20 ("APB" No. 20"), which was superseded by SFAS No. 154 in 2006, govern when an issuer must restate previously issued financial statements due to material errors.  Restatements are only to be made when they are "material."  APB No. 20.  Moreover, SFAS No. 154, like

APB No. 20, defines an "[e]rror in previously issued financial statements" as "[a]n error in recognition, measurement, presentment, or disclosure in financial statements resulting from mathematical mistakes, mistakes in the application of [Generally Accepted Accounting Principles], or oversight or misuse of facts that existed at the time the financial statements were prepared." Thus, the errors related to Fuqi's financial statements were, by definition, material errors that existed at the time the Company issued its financial statements.

## COUNT I

### Violation of Section 11 of the Securities Act
### (Against All Defendants)

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein only to the extent, however, that such allegations do not allege fraud, scienter or the intent of Fuqi, the Director Defendants and/or the Underwriter Defendants to defraud Plaintiff or members of the Subclass, but instead allege that these defendants acted negligently for making false and materially misleading statements in the Registration Statement and Prospectus issued in connection therewith.

44.     This Count is brought pursuant to Section 11 of the Securities Act and is asserted by Plaintiff against all the Defendants by, and on behalf of, the other members of the Subclass, consisting of all persons who acquired shares of the Company's common stock pursuant to or traceable to the Registration Statement and Prospectus issued in connection with the Company's Secondary Offering. PR Group member, the Puerto Rico Government Employees and Judiciary Retirement Systems Administration, purchased Fuqi stock pursuant or traceable to the Company's Secondary Offering.

45.     The Director Defendants, as signatories of the Registration Statement and Prospectus, as directors and/or officers of Fuqi and controlling persons of the issuer, owed to the holders of the stock obtained through the Registration Statement and Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus at the time it became effective to ensure that such statements were true and correct, and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading. If the Director Defendants had made a reasonable and diligent investigation, they would have known of the material misstatements and omissions contained in or omitted from the Registration Statement and Prospectus as set forth herein. As such, the Director Defendants are liable to the Subclass.

46.     The Underwriter Defendants owed to the holders of the stock obtained through the Registration Statement and Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement and Prospectus at the time it became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading. If the Underwriter Defendants had made a reasonable and diligent investigation, they would have known of the material misstatements and omissions contained in or omitted from the Registration Statement and Prospectus as set forth herein. As such, the Underwriter Defendants are liable to the Subclass.

47.     None of the Director Defendants or Underwriter Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the

statements contained in the Registration Statement and Prospectus were true or that there was no omission of material facts necessary to make the statements made therein not misleading.

48.     The Defendants named in this Count issued and disseminated, caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements to the investing public which were contained in the Registration Statement and Prospectus, which misrepresented or failed to disclose, *inter alia*, the facts set forth above. By reason of the conduct herein alleged, each of these Defendants violated Section 11 of the Securities Act.

49.     As a direct and proximate result of the Defendants' acts and omissions in violation of the Securities Act, the market price of Fuqi's common stock sold in the Secondary Offering was artificially inflated, and Plaintiff and the other members of the Subclass suffered substantial damage in connection with their purchase of Fuqi's common stock pursuant to the Registration Statement and Prospectus.

50.     Fuqi is the issuer of the stock sold via the Registration Statement and Prospectus. As issuer of the stock, the Company is strictly liable to Plaintiff and the members of the Subclass for the material misstatements and omissions therein.

51.     At the times they obtained their shares of Fuqi stock, Plaintiff and members of the Subclass did so without knowledge of the facts concerning the misstatements or omissions alleged herein.

52.     This action is brought within one year after discovery of the untrue statements and omissions in and from the Registration Statement and Prospectus and within three years of the effective date of the Registration Statement and Prospectus.

53.     By virtue of the foregoing, Plaintiff and the other members of the Subclass are entitled to damages under Section 11 as measured by the provisions of Section 11(e), from the Defendants named in this Count.

## COUNT II

### Violation of Section 12(a)(2) of the Securities Act
### (Against All Defendants)

54.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein only to the extent, however, that such allegations do not allege fraud, scienter or the intent of Fuqi, the Director Defendants and/or the Underwriter Defendants to defraud Plaintiff or members of the Subclass.

55.     This Count is brought pursuant to Section 12(a)(2) of the Securities Act on behalf of Plaintiff and the members of the Subclass, consisting of all persons and entities that purchased or otherwise acquired Fuqi stock pursuant or traceable to the Offering, against Fuqi, the Director Defendants and the Underwriter Defendants.

56.     Fuqi, the Director Defendants and the Underwriter Defendants were sellers, offerors, and/or solicitors of purchasers of the shares offered pursuant to the Prospectus.

57.     The Registration Statement and Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts.  The Director Defendants'

and the Underwriters Defendants' actions of solicitation included participating in the preparation of the false the misleading Registration Statement and Prospectus. Fuqi and the Underwriter Defendants, acting through their employees, agents and other, solicited such purchases for their personal financial gain through the preparation and dissemination of the Prospectus. The Prospectus was used to induce investors, such as the Plaintiff and other members of the Subclass, to purchase Fuqi common stock.

58. Pursuant to the Prospectus, the Underwriter Defendants purchased at least 4,855,000 shares of Fuqi common stock at the public offering price, less an underwriting discount, in the Secondary Offering. The Underwriters also exercised their over-allotment of 726,395 shares.

59. Fuqi, the Director Defendants and the Underwriter Defendants owed to the purchasers of Fuqi's common stock in the Offering, including Plaintiff and other members of the Subclass, the duty to make a reasonable and diligent investigation of the statements contained in the Secondary Offering materials, including the Registration Statement and Prospectus, to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Fuqi, the Director Defendants and the Underwriter Defendants did not make a reasonable and diligent investigation to ensure that statements contained in the Secondary Offering materials, including the Registration Statement and Prospectus, were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.

60. Plaintiff and other members of the Subclass purchased or otherwise acquired Fuqi common stock pursuant to and/or traceable to the defective Registration

Statement and Prospectus. Plaintiff and the other members of the Subclass did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Registration Statement and Prospectus.

61.     By reason of the conduct alleged herein, Fuqi, the Director Defendants and the Underwriter Defendants violated, Section 12(a)(2) of the Securities Act. Plaintiff, individually and representatively, has the right to rescind and hereby offers to tender to the Defendants named in this Count that Fuqi common stock which Plaintiff and other Subclass members continue to own, on behalf of all members of the Subclass who continue to own such common stock, in return for the consideration paid for that common stock together with interest thereon. Subclass members who have sold their Fuqi common stock are entitled to rescissory damages.

62.     This action is brought within three years from the time that the common stock upon which this Count is brought was sold to the public, and within one year from the time when Plaintiff discovered or reasonably could have discovered the facts upon which this Count is based.

## COUNT III

### Violation of Section 15 of the Securities Act
### (Against the Director Defendants)

63.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein only to the extent, however, that such allegations do not allege fraud, scienter or the intent of the Director Defendants to defraud Plaintiff or members of the Subclass.

64.     This Count is asserted against the Director Defendants, which includes the Officer Defendants, and is based upon Section 15 of the Securities Act on behalf of Plaintiff and the members of the Subclass.

65.     The Director Defendants by virtue of their offices, directorship and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Fuqi within the meaning of Section 15 of the Securities Act. The Director Defendants had the power and influence and exercised the same to cause Fuqi to engage in the acts described herein.

66.     The Director Defendants' positions made them privy to the material facts that were misrepresented or omitted from Plaintiff and the Subclass.

67.     By virtue of the conduct alleged herein, the Director Defendants are liable pursuant to Section 15 of the Securities Act for the aforesaid wrongful conduct and are liable to Plaintiff and the Subclass for damages suffered.

## SUBSTANTIVE EXCHANGE ACT ALLEGATIONS

68.     Plaintiff repeats and realleges each and every allegation contained above by reference as though set forth in full herein except for paragraphs 43 to 67 above.

69.     The Fuqi Defendants – namely Fuqi, Chong, Wong and Zhuang – are named herein as defendants for Plaintiff's Exchange Act claims.   Because of their positions within the Company, the Officer Defendants possessed the power and authority to control the contents of Fuqi's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.   The Officer Defendants also controlled the day-to-day operations of the

Company. Each of the Officer Defendants was provided with copies of the Company's reports alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material, non-public information available to them, each of the Officer Defendants knew, or recklessly disregarded, that the Company's internal controls were inadequate, which was not disclosed to, and was being concealed from, the public, and that the financial results reported for the quarters ending March 31, 2009, June 30, 2009, and September 30, 2009, on Forms 10-Q filed with the SEC were then materially false and misleading. The Officer Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Officer Defendants.

70.      In Fuqi's 2008 Form 10-K, which the Company filed with the SEC on March 31, 2009, the Company announced that, under the supervision of Chong and Wong, Fuqi conducted an evaluation of the effectiveness of the design and operation of its disclosure controls and procedures as of December 31, 2008. As a result of this evaluation, Fuqi concluded that the Company's disclosure controls and procedures were ineffective as of December 31, 2008 due to material weaknesses identified over financial reporting, specifically related to the period-end closing process and revenue recognition in improper periods. As Fuqi recognized, a material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected on a timely basis. The Company

identified the following weaknesses as material weaknesses that were included in management's assessment as of December 31, 2008:

1. ***We did not maintain effective control over the period-end closing process***.  Due to the insufficient number of qualified resources, we were unable to timely and accurately complete our work needed to close our books and prepare financial statements in accordance with accounting principles generally accepted in the United States of America.  This control deficiency resulted in significant amounts of audit adjustments to our 2008 financial statements.  In addition, this control deficiency could result in a material misstatement to annual or interim financial statements that would not be prevented or detected.  Accordingly, management determined that this control deficiency constitutes a material weakness.

2. ***We did not maintain effective control over the revenue cycle with revenue recognition***.  We did not properly perform and follow the control procedures set forth in the revenue cycle.  This control deficiency resulted in significant amounts of sales not being recorded in the proper periods.  Accordingly, management determined that this control deficiency constitutes a material weakness.[2]

71.     As a result of management's assessment of the effectiveness of the Company's internal control over financial reporting, Fuqi concluded that, as of December 31, 2008, the Company's internal control over financial reporting was not effective as a result of the identified material weaknesses.

72.     The Company also stated in its 2008 Form 10-K that it was in the process of implementing procedures to correct these weaknesses.  It stated:

    We have implemented, or plan to implement, the measures described below under the supervision and guidance of our management to remediate the above control deficiencies and to strengthen our internal controls over financial reporting. Key elements of the remediation effort include, but are not limited to, the following initiatives, which have been implemented, or are in the process of implementation, as of the date of filing of this Annual Report:

    1. We have increased efforts to enforce internal control procedures.  We have

---

[2]     Emphasis in original.

also reorganized the structure of our China financial department and clarified the responsibilities of each key personnel in order to increase communications and accountability.

2.  We have recruited and will continue to bring in additional qualified financial personnel for the accounting department to further strengthen our China financial reporting function.

3.  We will provide additional training on accounting principles and internal control procedures for our existing staffs. We have also required all personnel in our China financial department to obtain additional accounting certifications.

4.  We continually review and improve our standardization of our monthly and quarterly data collection, analysis, and reconciliation procedures. To further improve the timeliness of data collection, we are selecting and will install new point of sale systems and enterprise resource planning systems for our wholesale and retail operations.

5.  We have increased the level of communication and interaction among our China management, audit committee, independent auditors and other external advisors. In addition, our Chief Financial Officer and US GAAP team are becoming increasingly involved in and monitor the financial accounting and reporting process in China operations.

6.  We are in the process of expanding the internal control functions and honing related policies and procedures. We have hired a qualified and experienced Internal Audit Manager, who commenced work in January 2009. We also plan to allocate transfer additional resources to the internal audit department for the purpose of enhancing the internal audit function.

We believe that we are taking the steps necessary for remediation of the material weaknesses identified above, and we will continue to monitor the effectiveness of these steps and to make any changes that our management deems appropriate

**A.**     **Class Period Events and the Materially**
        **False and Misleading Statements**

73.     As stated above, Fuqi reported its first quarter 2009 results on May 15, 2009.  The cost of sales, gross profit, and net income results reported for the first quarter of 2009 in the 1Q 2009 10-Q as set forth above were materially false and misleading