because Fuqi and the Officer Defendants knew, or recklessly disregarded, that the Company's internal controls were inadequate, resulting in accounting errors relating to inventory and costs of sales during the quarter. The material deficiencies in Fuqi's internal controls caused the Company's cost of sales to be materially understated and the reported gross profit and net income to be materially overstated, as the Company would subsequently disclose on March 16, 2010.

74. Likewise, the statements in the various certifications executed by Defendants Chong and Wong were materially false and misleading because the Fuqi Defendants knew, or recklessly disregarded, that the Company's internal controls were inadequate and, therefore, the 1Q 2009 10-Q contained untrue statements of material fact concerning the reported costs of sales, gross profit and net income for the first quarter of 2009; the 1Q 2009 10-Q did not fairly present, in all material respects, the Company's financial condition due to the understatement of costs of sales and the overstatement of gross profit and net income for the quarter; and Fuqi's internal controls were not designed to, and did not, give reasonable assurance of the reliability of financial reporting and the preparation of financial statements.

75. As a result of the materially false and misleading statements contained in the Company's 1Q 2009 10-Q, the price of the Company's common stock rose from a close of $7.61 per share on May 15, 2009 to a close of $9.05 per share on May 16, 2009, the day after the first quarter 2009 financial results were released. In addition, various members of the financial media started to tout the Company following issuance of the 1Q 2009 10-Q. For example, on May 26, 2009, *Motley Fool* identified Fuqi as one of five companies on its *Wall Street Buy List*.

76. On August 6, 2009, Fuqi issued a press release announcing its financial results for the second quarter of 2009, ending June 30, 2009. In that release, the Company reported:

> Gross profit in the second quarter of 2009 ***increased 145.1% to $17.4 million from $7.1 million for the same period in the prior year.*** Gross profit margin for the second quarter of 2009 increased 660 basis points to 17.2% compared to 10.6% in the same period in the prior year. The improvement in gross margin was primarily due to an increase of product segments, an expansion in retail sales, which resulted from an increase in brand awareness, and opening additional jewelry counters as well as our acquisition of Temix's 50 retail counters/stores in 2008. Second quarter wholesale gross margin increased 510 basis points to 15.7% compared to 10.6% in the prior year period while retail gross margin increased significantly to 33.7% in the second quarter of 2009 compared to 7.4% in the second quarter of the prior year.
>
> \*       \*       \*
>
> Net income for the second quarter of 2009 ***increased 86.8% to $9.9 million,*** or $0.45 per diluted share, compared to $5.3 million, or $0.25 per diluted share in the same period of the prior year.

77. Commenting on these results, Defendant Chong was quoted in the press release as stating:

> I am pleased to report that, our team has once again delivered strong second quarter results. ***We believe this is an indication that our wholesale and retail strategy, combined with our vertically integrated operations and growing brand recognition, provides us with a blueprint for success and reflects the strength of our position in the growing Chinese jewelry marketplace.*** We look forward to capitalizing on opportunities that present themselves and putting the capital from our recently closed $120 million public offering in accretive use in the near future. We are excited about our opportunities to continue growing both our wholesale and retail businesses as well as focusing on our long-term goals. We continue to explore opportunities to enhance our growth and which will enable us to become a more efficient and productive organization so that we can continue to deliver solid results for our shareholders . . .

78. On that same day, the Company filed its quarterly report for the quarter ending June 30, 2009 on Form 10-Q with the SEC (the "2Q 2009 10-Q"). The 2Q 2009 10-Q contained the same gross profit and net income results reported in the press release. In addition, the 2Q 2009 10-Q also reported the Company's costs of sales for the quarter as $77,960,527 (wholesale) and $5,526,081 (retail).

79. Attached as exhibits to the 1Q 2009 10-Q were the certifications of Defendants Chong and Wong made pursuant to Sarbanes-Oxley, in which they each certified the same information with respect to the 2Q 2009 10-Q as they had previously in connection with 1Q 2009 10-Q.

80. The gross profit, and net income results reported for the second quarter of 2009 in the August 6, 2009 press release as set forth above, as well as the cost of sales, gross profit, and net income results reported in the 2Q 2009 10-Q as set forth above, were materially false and misleading because Fuqi and the Officer Defendants knew, or recklessly disregarded, that the Company's internal controls were inadequate, resulting in accounting errors relating to inventory and costs of sales during the quarter. The material deficiencies in Fuqi's internal controls caused the Company's cost of sales to be materially understated and the reported gross profit and net income to be materially overstated, as the Company would subsequently disclose on March 16, 2010.

81. Likewise, the statements in the various certifications executed by Defendants Chong and Wong referenced above were materially false and misleading because the Fuqi Defendants knew, or recklessly disregarded, that the Company's internal controls were inadequate and, therefore, the 2Q 2009 10-Q contained untrue statements of material fact concerning the reported costs of sales, gross profit and net

income for the second quarter of 2009; the 2Q 2009 10-Q did not fairly present, in all material respects, the Company's financial condition due to the understatement of costs of sales and the overstatement of gross profit and net income for the quarter; and Fuqi's internal controls were not designed to, and did not, give reasonable assurance of the reliability of financial reporting and the preparation of financial statements.

82. Similarly, the statements by Defendant Chong that the second quarter 2009 results indicated that Fuqi's wholesale and retail strategy, combined with its vertically integrated operations and growing brand recognition was "a blueprint for success" was materially false and misleading. Defendant Chong knew, or recklessly disregarded, that the Company's second quarter 2009 financial results, specifically its gross profit and net income, were overstated because of Fuqi's inadequate internal controls. The publicly financial results for the quarter were, therefore, not indicative of the financial condition of the Company, let alone the success of the Company's wholesale and retail strategy.

83. Based on the foregoing materially false and misleading statements and financial results, the price of Fuqi's common stock rose from a close of $24.40 per share on August 5, 2009 (the day prior to the issuance of the financial results) to a close of $27.39 on August 6, 2009 (the day the financial results were released).

84. On November 9, 2009, Fuqi issued a press release announcing its financial results for the third quarter of 2009, ending September 30, 2009. In that release, the Company reported:

> ***Gross profit in the third quarter of 2009 increased 172.0% to $29.9 million from $11.0 million for the same period in the prior year.*** Gross profit margin for the third quarter of 2009 increased to 23.5% compared to

11.7% in the same period in the prior year. The improvement in gross margin was primarily due to higher wholesale margins resulting from several sizeable ODM orders fulfilled during the third quarter. Third quarter wholesale gross margin increased 12.8% to 23.6% compared to 10.8% in the prior year period while retail gross margin was 22.6% in the third quarter of 2009 compared to 38.0% in the third quarter of the prior year.

\* \* \*

Net income for the third quarter of 2009 *increased 187.9% to $18.8 million, or $0.73 per diluted share, compared to $6.5 million, or $0.31 per diluted share in the same period of the prior year.*

85. In that same release, Defendant Chong was quoted as stating:

I am pleased to report that, our team has once again delivered strong third quarter results, especially as the third quarter has historically been a seasonally slower quarter for FUQI. *During the third quarter, we were able to report stronger than expected wholesale results primarily due to increased sales volume and through our original design manufacturing (ODM) work.*

86. On that same day, Fuqi filed its quarterly report for the period ending September 30, 2009 on Form 10-Q with the SEC (the "3Q 2009 10-Q"). The 3Q 2009 10-Q contained the same gross profit and net income results reported in the press release. In addition, the 3Q 2009 10-Q also reported the Company's costs of sales for the quarter as $89,712,957 (wholesale) and $7,538,332 (retail). In addition, in the 3Q 2009 10-Q, for the nine month period ended September 30, 2009, the Company reported costs of sales of $250,306,439 (wholesale) and $21,740,102 (retail); gross profit of $65,344,174; and net income of $38,299,249.

87. Attached as exhibits to the 3Q 2009 10-Q were the certifications of Defendants Chong and Wong made pursuant to Sarbanes-Oxley, in which they each

certified the same information with respect to the 3Q 2009 10-Q as they had previously in connection with 1Q 2009 10-Q and the 2Q 2009 10-Q.

88. The gross profit and net income results reported for the third quarter 2009 in the November 9, 2009 press release as set forth above, as well as the costs of sales, gross profit and net income reported for the third quarter 2009 and the nine months ended September 30, 2009 in the 3Q 2009 10-Q as set forth above, were materially false and misleading because Fuqi and the Officer Defendants knew, or recklessly disregarded, that the Company's internal controls were inadequate, resulting in accounting errors relating to inventory and costs of sales during the first and second quarters of 2009. The material deficiencies in Fuqi's internal controls caused the Company's cost of sales to be materially understated and the reported gross profit and net income to be materially overstated for the third quarter 2009 and the nine month period ended September 30, 2009, as the Company would subsequently disclose on March 16, 2010.

89. Likewise, the statements in the various certifications executed by Defendants Chong and Wong referenced above were materially false and misleading because the Fuqi Defendants knew, or recklessly disregarded, that the Company's internal controls were inadequate and, therefore, the 3Q 2009 10-Q contained untrue statements of material fact concerning the reported costs of sales, gross profit and net income for the third quarter of 2009; the 3Q 2009 10-Q did not fairly present, in all material respects, the Company's financial condition due to the understatement of costs of sales and the overstatement of gross profit and net income for the quarter; and Fuqi's internal controls were not designed to, and did not, give reasonable assurance of the reliability of financial reporting and the preparation of financial statements.

90. On January 12, 2010, as a result of the robust financial results reported by Fuqi and the Officer Defendants during the Class Period, *The Street.com* Senior Contributor Eric Jackson published an article about the Company entitled, *Score Some Beijing Bling with Fuqi*. In that article, Jackson wrote:

> Fuqi had a great 2009, with the share price going from a 52-week low of $3 to well over $32 a couple months back. Operationally, the company continues to grow its top and bottom lines.
>
> * * *
>
> ... [A recent stock price] drop represented a great opportunity to get in the stock. Factoring in the positive moves this week, Fuqi's share price is back close to $21. With the relatively modest valuation and the expected red-hot growth in China to continue, however, Fuqi temporarily appears to be still on sale, so a return trip to over $30 a share is not an unreasonable expectation over the next eight months, assuming that the company continues to execute as it did last year.
>
> The current quarter's earnings announcement should come out next month. If Fuqi meets expectations for the fourth quarter and can show that its growth rate is intact, investors should regain confidence in the stock.

### B. The Truth Is Revealed

91. On March 16, 2010, the Company stunned the market when it issued a press release announcing:

> On March 11, 2010, the management and the Audit Committee of the Company concluded that the Company's previously issued financial statements
>
> (i) as of and for the three months ended March 31, 2009 as included in the Company's Quarterly Report on Form 10-Q filed with the Securities and Exchange Commission (the "Commission") on May 15, 2009 (the "First Quarter 10-Q"),
>
> (ii) as of and for the three and six months ended June 30, 2009 as included in the Company's Quarterly Report on Form 10-Q filed with the Commission on August 6, 2009 (the "Second Quarter 10-Q"), and
>
> (iii) as of and for the three and nine months ended September 30, 2009 as included in the Company's Quarterly Report on Form 10-Q filed

32

with the Commission on November 9, 2009 (the "Third Quarter 10-Q", and collectively with the First Quarter 10-Q and the Second Quarter 10-Q, the "Filings"), *should not be relied upon due to an error in the accounting of inventory and cost of sales*.

92. As the Company further stated on March 16, 2010:

The Company has been conducting an assessment of its internal controls as of December 31, 2009 in accordance with the Company's Sarbanes-Oxley Act compliance procedures. Although the Company's assessment procedures are not yet complete, *the Company believes that at least one of the identified deficiencies related to its 2009 Sarbanes-Oxley Section 404 compliance audit, thus far, constitutes a material weakness, including but not limited to the Company's period-end closing process as of December 31, 2009.* The complete and final results of the Company's assessment of its internal controls will be disclosed in its Annual Report on Form 10-K for the year ended December 31, 2009.

As a result of the findings of the 2009 Sarbanes-Oxley Section 404 audit, thus far, the Company identified certain accounting errors that are expected to have a material impact on the previously issued quarterly financial statements for the first three quarters of 2009. Management and the accounting personnel require additional time to evaluate such effects on the previously filed quarterly financial statements of 2009. Because the review is still underway, the Company is unable to accurately estimate at this time the impacts on the Company's interim financial statements for the first three quarters of 2009. However, it is expected that as a result of the accounting errors, the cost of sales for each of the periods were understated and gross profit and net income, as a result, were accordingly overstated. Based on the Company's latest estimate, the earnings per share included in the previously issued financial statements for the nine months ended September 30, 2009 were overstated by approximately $0.15-$0.19 per share based on approximately 23.0 million weighted average number of shares for the nine months ended September 30, 2009. The foregoing estimate is based only upon preliminary information available to the Company as of the date of this press release, is subject to adjustment in connection with its ongoing review, and has not been audited by its independent registered public accounting firm. Due to the Company's ongoing internal analysis, the Company is currently unable to provide estimated results of operations for the year ended December 31, 2009. The Company will file its Annual Report on Form 10-K as soon as possible; however, there can be no assurance that the report will be filed within the extended 15 day deadline.

93. As a consequence of the foregoing disclosures, the price of Fuqi common stock dropped more than 35%, from a close of $19.00 per share on March 16, 2010, prior to the disclosures, to a close of $11.90 per share on March 17, 2010, the first trading day following the disclosures, on heavy trading volume of 17.3 million shares.

94. On or about September 8, 2010, Fuqi announced that it "was notified recently by the SEC of a formal investigation, and has received a subpoena from the SEC for certain documents, relating to its failure to timely file required periodic reports, as well as other matters."

## LOSS CAUSATION

95. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class and the Subclass. As a result of the open, well-developed, and efficient market for Fuqi's stock, the prices of the Company's common stock fell when the misrepresentations made to the investing community, including the disclosure of materially false and misleading financial statements, were finally disclosed to investors and the artificial inflation was removed from the stock price. As a result, Plaintiff and the Class and the Subclass suffered damages.

96. The false claims concerning Fuqi's financial statements and operating results caused and maintained artificial inflation in the Company's stock price throughout the Class Period and until the truth was disclosed to the market.

97. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial

contributing cause of the damages sustained by Plaintiff and other members of the Class and the Subclass. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Fuqi's costs of sales, gross profits and net income. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Fuqi and its financial well-being, business relationships, and prospects, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. During the Class Period, Defendants' materially false and misleading statements resulted in Plaintiff and other members of the Class and the Subclass purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein. The price of Fuqi common stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## ADDITIONAL SCIENTER ALLEGATIONS

98. With respect to Plaintiff's Exchange Act claims as alleged herein, Fuqi and the Officer Defendants acted with scienter because they: (i) knew, or recklessly disregarded, that the public statements issued or disseminated by them were materially false and misleading; (ii) knew that such statements would be issued or disseminated to the investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Fuqi and the Officer Defendants, by virtue of their receipt of information reflecting the true facts regarding the

inadequate internal controls at Fuqi, their control over, and/or receipt and/or modification of Fuqi's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Fuqi, participated in the fraudulent scheme alleged herein.

99. In addition, Fuqi and the Officer Defendants acted with scienter because the material misstatements and omissions disseminated by them as alleged herein concern Fuqi's core business operations and products.

100. Fuqi and the Officer Defendants also wanted to ensure the success of the Secondary Offering, and therefore they knowingly concealed the extant internal control problems that caused the material understatement of costs of goods sold and overstatement of gross profits and net income during the Class Period. As a consequence, the Company was able to report profits that were materially higher than those actually earned during the Class Period.

## APPLICABILITY OF PRESUMPTION OF RELIANCE AND FRAUD ON THE MARKET DOCTRINE

101. At all relevant times, the market for Fuqi's securities was an efficient, well-developed and open market. As a result of these materially false and misleading statements and failures to disclose material information, Fuqi's stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Fuqi stock relying upon the integrity of the market price of the Company's stock and market information related to the Company. The efficiency of the market for Fuqi's stock is demonstrated by the following reasons, among others:

(a) Fuqi's stock was traded on the NASDAQ exchange with trading volume in the hundreds of thousands and with millions of shares traded throughout the Class Period;

(b) As a regulated issuer, Fuqi filed periodic public reports with the SEC and the NASDAQ;

(c) Fuqi regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Fuqi was followed by securities analysts during the Class Period who issued reports which were publicly available and entered the public marketplace.

102. As a result of the foregoing, the market for Fuqi's common stock promptly digested current information regarding Fuqi from all publicly-available sources and reflected such information in Fuqi's stock price. During the Class Period, Fuqi and the Officer Defendants materially misled the investing public, thereby inflating the price of Fuqi securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make the statements not false and misleading. These statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business, and operations.

103. At all relevant times, the material misrepresentations and omissions were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Fuqi and the Officer Defendants made, or caused to be made, a series of materially false or misleading statements about Fuqi's business, accounting, and financial results. The material misstatements and omissions described herein had the cause and effect of creating in the market an unrealistically positive assessment of Fuqi and its business and operations, thus causing the Company's stock to be overvalued and artificially inflated at all relevant times. The materially false and misleading statements made by Fuqi and the Officer Defendants during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages alleged when the truth was revealed. Under these circumstances, all purchasers of Fuqi's common stock during the Class Period suffered similar injury through their purchase of Fuqi's common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

104. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, the Fuqi Defendants are liable for

those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Fuqi who knew that those statements were false when made.

## COUNT IV

**Violation of Section 10(b) of the Exchange Act
And SEC Rule 10b-5 Promulgated Thereunder
(Against Fuqi and the Officer Defendants)**

105. Plaintiff repeats and realleges each and every allegation contained above by reference as though set forth in full herein except for paragraphs 43 to 67 above.

106. During the Class Period, Fuqi and the Officer Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Fuqi common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Fuqi and the Officer Defendants took the actions set forth herein.

107. Fuqi and the Officer Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Fuqi common stock in violation of Section 10(b) of the Exchange Act

and Rule 10b-5. The Officer Defendants are sued as primary participants in the wrongful and illegal conduct charged herein and as controlling persons as alleged below.

108. Fuqi and the Officer Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Fuqi's financial results, business relationships, and prospects, as specified herein.

109. Fuqi and the Officer Defendants employed devices, schemes and artifices to defraud, while in possession of material, adverse, non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Fuqi's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Fuqi and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Fuqi's common stock during the Class Period.

110. The Officer Defendants' primary liability and controlling person liability arise from the following facts: (i) the Officer Defendants were high-level executives and directors at the Company during the Class Period, and members of the Company's management team, or had control thereof; (ii) the Officer Defendants, by virtue of their responsibilities and activities as senior officers and/or directors of the Company were privy to data about the adequacy of the Company's internal controls, as well as its

financial results; and (iii) the Officer Defendants were aware of the dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

111. Fuqi and the Officer Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of supporting the artificially inflated price of Fuqi's common stock. As demonstrated by their material misstatements about the Company's financial results throughout the Class Period, Fuqi and the Officer Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

112. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Fuqi's common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of Fuqi's common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Fuqi and the Officer Defendants, or upon the integrity of the market in which the common stock trades, and/or in the absence of material, adverse information that was known to or recklessly disregarded by Fuqi and the Officer Defendants, but not disclosed in public statements by them during the Class Period, Plaintiff and the other members of the Class acquired

Fuqi's common stock during the Class Period at artificially high prices and were damaged thereby.

113. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the Company's inadequate internal controls and financial results, which were not disclosed by Fuqi and the Officer Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Fuqi common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

114. By virtue of the foregoing, Fuqi and the Officer Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

115. As a direct and proximate result of Fuqi and the Officer Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

## COUNT V

### Violation of Section 20(a) of the Exchange Act
### (Against The Officer Defendants)

116. Plaintiff repeats and realleges each and every allegation contained above by reference as though set forth in full herein except for paragraphs 43 to 67 above.

117. The Officer Defendants acted as controlling persons of Fuqi within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-

level positions, and awareness of the Company's operations and/or intimate knowledge of the false statements in connection with the Company's Class Period financial results and the adequacy of its internal controls that were disseminated to the investing public, the Officer Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Officer Defendants were provided with or had unlimited access to data about the Company's financial results and the adequacy of its internal controls, issued the statements that Plaintiff alleges are materially false and misleading, and/or shortly after these statements were issued had the ability to cause the statements to be corrected.

118. In particular, the Officer Defendants had direct and supervisory involvement in the day-to-day operations of the Company, as well as its financial reporting processes and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

119. As set forth above, the Officer Defendants violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Officer Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the Officer Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding damages in favor of Plaintiff and the other Class and Subclass members against all Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Ordering that Plaintiff and the members of the Subclass who retain their Fuqi common stock purchased in the Secondary Offering can return such shares to the Defendants named in Count II and award rescissory damages to those shares which the Plaintiff and the other members of the Subclass purchased in the Secondary Offering but have since sold;

(d) Awarding Plaintiff and the Class and the Subclass pre-judgment and post-judgment interest, as well as their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(e) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 15, 2011

ABRAHAM, FRUCHTER & TWERSKY, LLP

By: _____
Mitchell M.Z. Twersky (MT-6739)
Lawrence D. Levit (LL-9507)
Ximena R. Skovron (XS-3397)
One Penn Plaza, Suite 2805
New York, NY 10119
Telephone: (212) 279-5050
Facsimile: (212) 279-3655
mtwersky@aftlaw.com
llevit@aftlaw.com
xskovron@aftlaw.com

**Lead Counsel for Plaintiff**

**RIGRODSKY & LONG, P.A.**
Timothy J. MacFall
585 Stewart Avenue, Suite 304
Garden City, NY 11530
Telephone: (516) 683-3516

**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy
Michael Goldberg
Ex Kano S. Sams II
Andy Sohrn
Robert V. Prongay
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**Counsel for Plaintiff**