**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ----------------------------------------------------------------------X | | |
| | : | |
| IN RE FUQI INTERNATIONAL, INC. | : | 10 Civ. 2515 (DAB) |
| SECURITIES LITIGATION | : | |
| | : | <u>CLASS ACTION</u> |
| ----------------------------------------------------------------------X | | |
| This Document Relates To: | : | |
| | : | ECF Case |
| ALL ACTIONS. | : | |
| | : | |
| ----------------------------------------------------------------------X | | |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT**
**OF AMENDED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF**
<u>**ALLOCATION**</u>

**ABRAHAM, FRUCHTER & TWERSKY, LLP**
One Penn Plaza, Suite 2805
New York, NY 10119
Tel:    212-279-5050
Fax:    212-279-3655

**Lead Counsel for Lead Plaintiff the PR Group**

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ................................................................................................................ 3

I.      STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENTS .......... 3

II.     THE PROPOSED SETTLEMENT IS PROCEDURALLY AND
SUBSTANTIVELY FAIR, ADEQUATE AND REASONABLE ........................ 4

     A.     The Settlement is Entitled to a Strong Presumption of Fairness
Because It Is the Product of Arm's-Length Negotiations
Among Experienced Counsel ...................................................................... 4

     B.     The Settlement is Substantively Fair, Adequate and Reasonable
Under *Grinnell* ......................................................................................... 5

          1.     Continued Litigation Would be Complex, Protracted and
Consume Substantial Judicial and Private Resources ................. 5-6

          2.     Plaintiffs Have Sufficient Information to Make Informed
Decisions About the Settlement of This Case ................................. 9

          3.     The Reaction of the Class has Been Overwhelmingly
Positive .......................................................................................... 11

          4.     The Risk of Establishing Liability .................................................. 13

          5.     The Considerable Risk of Establishing Damages .......................... 14

          6.     The Risks of Maintaining the Class Action Through Trial ............ 16

          7.     The Reasonableness of the Settlement in Light of the Best
Possible Recovery and the Attendant Risks of Litigation ............ 16

          8.     Defendants' Ability to Withstand a Greater Judgment .................. 19

III.    THE PLAN OF ALLOCATION OF THE NET SETTLEMENT
FUND IS FAIR AND REASONABLE ................................................................ 19

IV.    THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF
RULE 23 .............................................................................................................. 21

     A.     The Numerosity Requirement is Satisfied ................................................. 21

B.    Plaintiffs and the Proposed Class Share
Common Questions of Law And Fact ......................................................21

C.    Plaintiffs and Lead Counsel Will
Adequately Represent the Proposed Class..................................................22

D.    The Proposed Class Satisfies the Requirements of Rule 23(b)(3)............23

    1.    Common Questions of Law and Fact Predominate ......................24

    2.    A Class Action is Superior to Multiple Individual Actions...........24

CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) ................................................................ 17

*In re Advanced Battery Techs. Sec. Litig.*,
    Cons. Civ. Action No. 11 Civ. 2279 (CM), 2014 U.S. Dist. LEXIS 39575
    (S.D.N.Y. Mar. 24, 2014) ................................................................ 3, 8, 10, 19

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ................................................................ 21

*In re AMF Bowling Sec. Litig.*,
    334 F. Supp. 2d 462 (S.D.N.Y. 2004) ................................................................ 5

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    No. 02 Civ. 5575, 2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) ................ 18

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000) ................................................................ 23

*Berger v. Compaq Computer Corp.*,
    257 F.3d 475 (5th Cir. 2001) ................................................................ 16

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999) ................................................................ 22

*Carpe v. Aquila, Inc.*,
    No. 02-0388-CV-W-FJG, 2005 U.S. Dist. Lexis 44667 (W.D. Mo. Mar. 23,
    2005) ................................................................ 15

*Chatelain v. Prudential-Bache Sec.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) ................................................................ 16

*In re China Sunergy Sec. Litig.*,
    No. 07 Civ. 7895, 2011 U.S. Dist. LEXIS 53007 (S.D.N.Y. May 13, 2011) ................ 17

*Citibank, N.A. v. K-H Corp.*,
    968 F.2d 1489 (2d Cir. 1992) ................................................................ 20

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ................................................................ 4

iii

*Cromer Fin. Ltd. v. Berger*,
    205 F.R.D. 113 (S.D.N.Y. 2001) ............................................................... 22

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
    No. 05 Civ 10240 (CM), 2007 Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ............... 3-4

*In re Excess Value Ins. Coverage Litig.*,
    Nos. M-21-84 (RMB), MDL-1339, 2004 U.S. Dist. LEXIS 14822 (S.D.N.Y.
    July 30, 2004) ................................................................................... 5

*In re Gilat Satellite Networks, Ltd.*,
    No. CV-02-1510 CPS, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) .............................. 6

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................... 5

*Hicks v. Morgan Stanley & Co.*,
    No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24,
    2005) ............................................................................................ 8

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 26,
    2003) ...................................................................................... 14, 17

*In re Initial Pub. Offering Sec. Litig.*,
    226 F.R.D. 186 (S.D.N.Y. 2005) ............................................................... 5

*Kaufman v. Motorola, Inc.*,
    No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627 (N.D. Ill. Sept. 21, 2000) ...................... 15

*Lewis v. Newman*,
    59 F.R.D. 525 (S.D.N.Y. 1973) ............................................................... 13

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................................................... 18

*Maywalt v. Parker & Parsley Petroleum Co.*,
    147 F.R.D. 51 (S.D.N.Y. 1993) ............................................................... 21

*McManus v. Fleetwood Enters.*,
    320 F.3d 545 (5th Cir. 2003) ................................................................. 22

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    No. 02 MDL 1484, 2007 U.S. Dist. LEXIS 93423 (S.D.N.Y. Dec. 20, 2007) .................. 6

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) ................................................................. 13

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) .................................................................... 17

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................... 16, 17

*In re Penthouse Exec. Club Comp. Litig.*,
    No. 10 Civ. 1145, 2013 U.S. Dist. LEXIS 63065 (S.D.N.Y. Apr. 30, 2013) ......... 5, 21, 22

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
    148 F.3d 283 (3d Cir. 1998) .................................................................... 22

*Robinson v. Metro-North Commuter R.R. Co.*,
    267 F.3d 147 (2d Cir. 2001) .................................................................... 22

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    No. 06 Civ. 5173 (RPP), 2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1,
    2008) ............................................................................................... 8

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ............................................................ 22

*Taft v. Ackermans*,
    No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007) ...................... 6

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) .................................................... 4, 19

*Thompson v. Metro. Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) ............................................................... 4

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    718 F. Supp. 1099 (S.D.N.Y. 1989) .......................................................... 3

*In re Veeco Instruments Sec. Litig.*,
    05 MDL 01695, 2007 U.S. Dist. LEXIS 85629 (S.D.N.Y. Nov. 7, 2007) .......... 13, 16, 17

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
    396 F.3d 96 (2d Cir. 2005) .................................................................. 3, 17

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ........................................................... 16

*In re Worlds of Wonder Sec. Litig.*,
    35 F.3d 1407 (9th Cir. 1994) ........................................................ 13

*Zerkle v. Cleveland-Cliffs Iron Co.*,
    52 F.R.D. 151 (S.D.N.Y. 1971) ..................................................... 13

**STATUTES**

15 U.S.C. § 77(e) ................................................................................. 15

Fed. R. Civ. P. 23(a) ........................................................................... 21

Fed. R. Civ. P. 23(a)(1) ....................................................................... 21

Fed. R. Civ. P. 23(a)(2) ................................................................. 21, 22

Fed. R. Civ. P. 23(a)(3) ....................................................................... 21

Fed. R. Civ. P. 23(a)(4) ....................................................................... 23

Fed. R. Civ. P. 23(b) ........................................................................... 21

Fed. R. Civ. P. 23(b)(3) ........................................................ 21, 23, 24, 25

Fed. R. Civ. P. 23(e) ........................................................................ 1, 3

**OTHER AUTHORITIES**

Laarni T. Bulan, Ellen M. Ryan, and Lara E. Simmons,
    *Cornerstone Research, Securities Class Action Settlements: 2013 Review and*
    *Analysis* (Mar. 27, 2014) ............................................................... 8

Jacques Delisle and Elizabeth Trujillo,
    Consumer Protection in Transnational Contexts, 58 Am. J. Comp. L. 135
    (2010) ......................................................................................... 7

Zhong Jianhua and Yu Guanghua,
    *Establishing the Truth on Facts: Has the Chinese Civil Process Achieved this*
    *Goal?*, 13 J. Transnat'l L. & Pol'y 393 (2004) ............................... 7

Stephanie Plancich, Ph.D., Brian Saxton, Svetlana Starkyh,
    *Recent Trends in Shareholder Class Actions:  Filings Return to 2005 Levels*
    *as Subprime Cases Take Off; Average Settlements Hit New High*, (NERA
    2007) ......................................................................................... 18

Ellen M. Ryan & Laura E. Simmons,
    *Securities Class Action Settlements: 2011 Review and Analysis* (Cornerstone
    Research 2012).................................................................................................... 17

Jessica Seah,
    *Decline in Securities Litigation Against U.S.-listed Chinese Companies*, The
    Asian Lawyer (Jan. 30, 2013) ........................................................................ 8, 9

## PRELIMINARY STATEMENT

The Court-appointed Lead Plaintiff PR Group[1] by and through its undersigned counsel, respectfully submit this memorandum of law in support of their amended motion pursuant to Federal Rule of Civil Procedure 23(e), for final approval of the Settlement of this action as set forth in the Stipulation of Settlement ("Stipulation") and for approval of the Plan of Allocation of the Settlement proceeds.[2] Plaintiffs also submit this motion in response to the Court's July 2, 2015 Order directing that an amended motion for final approval of the proposed settlement, with supporting papers, be filed, including updated information regarding objections, requests for exclusion, claim forms submitted to the claims administrator, and any other relevant information.

Plaintiffs have achieved a $7.5 million cash settlement (the "Settlement Amount") on behalf of all persons who purchased or otherwise acquired the common stock of Fuqi International, Inc. ("Fuqi" or the "Company") between May 15, 2009, and March 27, 2011, inclusive, and were damaged thereby, and additionally on behalf of a Subclass of all those who purchased or otherwise acquired Fuqi common stock pursuant, or traceable, to the Secondary Offering on or about July 22, 2009, and who were damaged thereby (collectively, the "Class"). The Settlement, which was achieved only after the parties appeared for a full day mediation session before a retired United States District Court Judge, represents an excellent result for the Class and is fair, reasonable, and adequate under the governing standards in this Circuit.

Lead Counsel respectfully submit that this Settlement is particularly noteworthy given the

---

[1] PR Group is comprised of the Puerto Rico Government Employees and Judiciary Retirement Systems Administration, Craig B. Laub, J.D. Pisut and Sandra Redfern (collectively "Plaintiffs").

[2] The Stipulation, which was filed with the Court on October 7, 2014 (Dkt. No. 92, Declaration of Lawrence D. Levit, Ex.1), contains all material terms of the Settlement. Unless otherwise defined, all capitalized terms have the meaning set forth in the Stipulation.

serious obstacles to recovery.  When viewed in light of the risks that Defendants could prevail at summary judgment or at trial, based on their defenses that Plaintiffs would be unable to establish scienter and their position that the Class suffered little or no legally cognizable loss because the decline in the Company's stock price was caused by other factors, the Settlement is a substantial result for the Class.  The Settlement also saves the Class the considerable expense and delay posed by continued litigation, especially here, where much of the evidence consists of documents that are in Chinese and witnesses who are located in China, and would likely result in disputes concerning translation, and depositions and trial testimony would be conducted primarily of witnesses who would require translators.  Moreover, a further possible complication existed in that Defendants contended that the Chinese courts would be unlikely to enforce a judgment of a U.S. court against a Chinese company.  While Plaintiffs' Counsel disputed such claim, it still may have required a long and difficult process to prevail upon a Chinese court to enforce any judgment, and after years of such litigation, collection may have been problematic.  As discussed below and in the Amended Declaration of Lawrence D. Levit in Support of Lead Plaintiff's Amended Motion for Final Approval of Settlement and Plan of Allocation and For Attorneys' Fees, Reimbursement of Expenses and Lead Plaintiff Awards ("Levit Declaration" or "Levit Decl."), submitted herewith, the significant risks involved in taking this Action further in litigation, and possibly on to trial, when measured against the benefit of the Settlement, firmly support approval of this Settlement.

Accordingly, Plaintiffs respectfully request that the Court grant final approval of this Settlement.  In addition, the Plan of Allocation, which was developed with the assistance of Plaintiffs' damages consultant, is a fair and reasonable method for distributing the Net Settlement

Fund to Class Members, and should also be approved by the Court.[3]

## ARGUMENT

## I.   <u>STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENTS</u>

"The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation." *In re Advanced Battery Techs. Secs. Litig.*, No. 11 Civ. 2279 (CM), 298 F.R.D. 171, 2014 U.S. Dist. LEXIS 39575, at *6-7 (S.D.N.Y. Mar. 24, 2014).  Thus, when exercising discretion to approve a settlement, courts are "mindful of the strong judicial policy in favor of settlements."  *Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005) (citation omitted).

"Due to the presumption in favor of settlement, '[a]bsent fraud or collusion, courts should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'"  *In re Advanced Battery Techs. Sec. Litig.*, Cons. Civ. Action No. 11 Civ. 2279 (CM), 2014 U.S. Dist. LEXIS 39575, at *6-7 (S.D.N.Y. Mar. 24, 2014) (citation omitted).  Federal Rule of Civil Procedure 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e).  In practice, courts apply this rule by generally approving a settlement that is "fair, adequate, and reasonable, and not the product of collusion."  *Wal-Mart*, 396 F.3d at 116 (internal quotation omitted).

A class action settlement enjoys a "presumption of correctness" where it is the product of arm's-length negotiations conducted by experienced, capable counsel.  *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (citation omitted); *In re*

---

[3]  A full recitation of the factual and procedural background of the litigation is set forth in the Levit Declaration submitted contemporaneously herewith.

*EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ 10240 (CM), 2007 Dist. LEXIS 57918, at *11 (S.D.N.Y. July 27, 2007).

With respect to substantive fairness, the standards governing approval are well established. Courts in this Circuit determine whether a class action settlement's terms are fair, adequate, and reasonable according to the "*Grinnell* factors:"

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation.

*Wal-Mart*, 396 F.3d at 117 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)). "In finding that a settlement is fair, reasonable and adequate, not every factor must weigh in favor of the settlement." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008). Rather, "the court should consider the totality of these factors in light of the particular circumstances." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (citation omitted).

The proposed Settlement is fair, reasonable and adequate when measured under the relevant criteria and the particular circumstances of this action and, therefore, should be approved.

## II.   THE PROPOSED SETTLEMENT IS PROCEDURALLY AND <u>SUBSTANTIVELY FAIR , ADEQUATE AND REASONABLE</u>

### A.   The Settlement is Entitled to a Strong Presumption of Fairness Because It Is the Product of Arm's-Length Negotiations <u>Among Experienced Counsel</u>

As noted above, a strong presumption of fairness attaches to a class action settlement where, as here, it is reached in arm's-length negotiations among able counsel. *See Wal-Mart*, 296 F.3d at

4

116; *In re Excess Value Ins. Coverage Litig.*, Nos. M-21-84 (RMB), MDL-1339, 2004 U.S. Dist. LEXIS 14822, at *34 (S.D.N.Y. July 30, 2004) (citation omitted).

Here, the proposed Settlement is the product of extensive, arm's-length negotiations that occurred during and after a full-day, in-person mediation session before Judge Phillips on December 12, 2013.  The mediation session included arguments by the parties, as well as representatives of the Company's insurance carriers, as to the strengths and weaknesses of the case, Plaintiffs' ability to enforce any judgment in the PRC, and the Plaintiffs' damages analysis.  Judge Phillips' role in the settlement negotiations strongly supports a finding that the negotiations were conducted at arm's-length and without collusion.  *See In re Penthouse Exec. Club Comp. Litig.,* No. 10 Civ. 1145, 2013 U.S. Dist. LEXIS 63065, at *8 (S.D.N.Y. Apr. 30, 2013) (a settlement with the assistance of an experienced mediator "enjoys a 'presumption that the settlement achieved meets the requirements of due process.'") (citation omitted); *In re Initial Pub. Offering Sec. Litig.,* 226 F.R.D. 186, 194 & n.42 (S.D.N.Y. 2005); *In re AMF Bowling Sec. Litig.*, 334 F. Supp. 2d 462, 465 (S.D.N.Y. 2004).

Further, that all parties were represented throughout the Settlement negotiations by able counsel experienced in class action and securities litigation militates in favor of approving the Settlement.  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004).  No question exists that Lead Counsel were fully informed of the merits and weaknesses of the case by the time the Settlement was consummated.  *See* Levit Decl. ¶¶4-5, 31-33, 39.

Because the Settlement was negotiated at arm's-length by sophisticated and knowledgeable counsel before an experienced mediator, the process was fair to absent Class Members.  The Court should accord a strong presumption of fairness to the Settlement process.

   **B.**  **The Settlement is Substantively Fair, Adequate and Reasonable Under *Grinnell***

    **1.**  **Continued Litigation Would be Complex, Protracted and**

### Consume Substantial Judicial and Private Resources

Plaintiffs, represented by counsel experienced in securities litigation, took into account the risks inherent in establishing Defendants' liability. While Plaintiffs believe they would have prevailed on their claims, they are, nonetheless, cognizant that there was a risk that they would have been unsuccessful. That risk, which would result in the Class receiving nothing, strongly favors approval of the Settlement. *See In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484, 2007 U.S. Dist. LEXIS 93423, at *27-28 (S.D.N.Y. Dec. 20, 2007) ("The high risk of going forward with this case and attempting to prove liability and establish damages weighs most heavily in favor of approving the Settlement."); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 CPS, 2007 WL 1191048, at *37-40 (E.D.N.Y. Apr. 19, 2007) (high uncertainty of demonstrating elements of federal securities claims militated in favor of settlement); *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *19-22 (S.D.N.Y. Jan. 31, 2007) (same).

Defendants' adamant contention that Plaintiffs would not be able to establish liability and/or damages would likely have contributed to a lengthy and expensive litigation absent the proposed Settlement. Here, the securities claims advanced by Plaintiffs involved numerous complex factual issues relating to accounting, which were complicated by language issues and accounting procedures in the PRC that differed from those in this country. Moreover, issues of loss causation were disputed as were the amount of damages and the ability to enforce any judgment.

Defendants, among other things, asserted that that Plaintiffs failed to adequately allege scienter because Plaintiffs purportedly pleaded no facts establishing that any Company insider had a motive to commit fraud, and no other facts demonstrating that the Company intentionally or recklessly issued the challenged statements. While Plaintiffs believe that they could have overcome this challenge and satisfied their pleading burden, they also recognize that ultimate success is far

from certain.  If the case was to proceed, Defendants would have additional defenses and arguments to raise at summary judgment, class certification and trial.  For example, Defendants contended that they repeatedly disclosed Fuqi's control weaknesses, rebutting any inference of scienter, and that the Company's officers and directors acted in good faith to resolve any accounting problems.  While Plaintiffs also asserted claims under the Securities Act which did not require scienter, Defendants contended, among other things, that Class members would be unable to trace their purchases to the Secondary Offering and, in any event, a Class would be unable to be certified for that claim because tracing would require an individual inquiry.  Moreover, Defendants claimed that Securities Act damages were limited by market forces and that any recovery would be minimal.  Many of these issues and Lead Plaintiff's allegations, and the defenses raised by Defendants, would require analysis by experts, including as to the proper accounting procedures.  The legal issues in this Action are equally complex – proving scienter, materiality, causation and damages – and would also require expert testimony from both sides.

In addition, adducing evidence to support Plaintiffs' claims would have been difficult. Because Fuqi is headquartered in, and most of the Individual Defendants are citizens of, the PRC, Plaintiffs lacked subpoena power to compel the appearance of fact witnesses.  Indeed, commentators have noted that it can be difficult, if not impossible, to obtain evidence from China because of its very different regulatory regime governing access to documents and witnesses.  *See* Jacques Delisle and Elizabeth Trujillo, Consumer Protection in Transnational Contexts, 58 Am. J. Comp. L. 135, 161 (2010) ("Discovery in China for litigation in the United States faces formidable barriers[.]"); Zhong Jianhua and Yu Guanghua, *Establishing the Truth on Facts: Has the Chinese Civil Process Achieved this Goal?*, 13 J. Transnat'l L. & Pol'y 393, 409 (2004) ("Strictly speaking, there is no system comparable to discovery in China.").

There can be no doubt that because this Action is settling against the Defendants at this time, the litigants and the Court have been spared the delay and expense of continued litigation.  Even if the Class could recover a larger judgment after a trial, the additional delay through trial, post-trial motions, and the appellate process could deny the Class any recovery for years, further reducing its value.  *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 U.S. Dist. LEXIS 36093, at *17-18 (S.D.N.Y. May 1, 2008) ("*Sony*"); *Strougo*, 258 F. Supp. 2d at 261 ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *16 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").  Moreover, the proposed Settlement provides the certainty of a present recovery for the shareholders against foreign defendants who might be immune from a judgment entered by a court in the United States.  *See, e.g., Advanced Battery*, 2014 U.S. Dist. LEXIS 39575, at *23 (recognizing risk that a judgment would prove uncollectible in China).  Generally, settlements with Chinese issuers have proven to be considerably lower than typical securities settlements against U.S. Companies, garnering the label "China discount."  Jessica Seah, *Decline in Securities Litigation Against U.S.-listed Chinese Companies*, The Asian Lawyer (Jan. 30, 2013).[4]

---

[4] For example, in 2013, of the fourteen securities class actions against Chinese issuers that were settled, "[a]ll but one" settled for an "amount[] less than $10 million."  Laarni T. Bulan, Ellen M. Ryan, and Lara E. Simmons, *Cornerstone Research, Securities Class Action Settlements: 2013 Review and Analysis*, at 2 (Mar. 27, 2014).  There were also three

While Plaintiffs might also have been able to obtain liability against other Defendants, given that Fuqi was the issuer of the securities, liability against the Company would have been more readily obtainable than against the other Defendants, which may have had more persuasive defenses available to the claims, including that they conducted appropriate due diligence and operated in good faith.  In any event, collecting on any judgment would have been an additional issue that Plaintiffs would have needed to overcome, including possible litigation in China, likely would not have been resolved for several additional years, with the increased risk of either being unable to enforce the judgment or to collect on the judgment.  The Settlement avoids these additional risks.

Therefore, the risks of continued litigation provide strong support for approval of this Settlement.

> **2.   Plaintiffs Have Sufficient Information to Make Informed Decisions About the Settlement of This Case**

Plaintiffs have conducted sufficient due diligence and discovery to properly evaluate the case and assess the adequacy of the Settlement.  *Global Crossing*, 225 F.R.D. at 458 ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims.") (citations omitted).  To date, Lead Counsel has investigated the claims by reviewing more than two hundred thousand pages of documents produced by Defendants; conducting extensive interviews of a member of the Board's Audit Committee during the relevant period, and outside counsel retained by the Audit Committee to investigate the cash transfer issues; and retaining investigators that identified and interviewed former company employees.  (Levit Decl. ¶33).  Lead Counsel also researched the law as to discovery in China and for enforcing any U.S. judgment in

China-related securities litigation settlements in 2012 for $600,000, $2 million, and $3 million.  Seah, *supra*.  The Settlement Amount here falls squarely within the range of settlements with other Chinese issuers.

Chinese courts.  Lead Counsel drafted extensive submissions in preparation for the mediation session, and also held discussions with Defendants' counsel during and after the mediation session that crystallized for them the defenses that would be pressed if the case progressed.  Plaintiffs also gained a sufficient understanding of the potentially recoverable damages through Defendants' insurers, representatives of which were present at the mediation.  (*Id.* ¶ 32.)  *Advanced Battery*, 2014 U.S. Dist. LEXIS 39575, at *17 ("While no merits discovery occurred in this case to date, Lead Counsel conducted targeted post-Settlement discovery with respect to ABAT's recoverable assets. Thus Lead Counsel is knowledgeable with respect to possible outcomes.").  Thus, Plaintiffs and Lead Counsel have sufficient knowledge of the strengths and weaknesses of Plaintiffs' claims to support the Settlement.

### 3.  The Reaction of the Class has Been Overwhelmingly Positive

The reaction of the Class to the Settlement also strongly supports final approval.  Pursuant to this Court's Order Preliminarily Approving Settlement and Providing for Notice of Proposed Settlement (the "Preliminary Approval Order"), dated November 21, 2014, Angeion Group ("Angeion") was appointed Claims Administrator to supervise and administer the notice procedure as well as the processing of claims in connection with the proposed Settlement of this action.  *See* Amended Declaration of Charles E. Ferrara re: (1) Updated Report on Notice of the Settlement Class; (2) Receipt of Exclusion Requests and Objections; and (3) Report on Number of Claims Filed ("Ferrara Decl.") (attached as Exhibit 9 to the Levit Declaration), ¶2.  As Angeion previously informed the Court, as of January 14, 2015, Angeion had delivered 4,771 copies of the Notice and Proof of Claim Form (together, the "Notice") to the United States Postage Service ("USPS") to be mailed by First-Class mail, post pre-paid.  Ferrara Decl., ¶3.  During the process of providing Notice to Class Members, Angeion received requests from brokers and other nominees to: (1) send the

10

Notice to the broker or nominee for distribution to the broker or nominee's customers with relevant holdings;  or (2) send the Notice directly to the broker or nominee's customers with relevant holdings, whose contact information the broker or nominee provided to Angeion.  *Id.*  Banks, brokers and other nominees were requested, within 20 days of receipt of the Notice, to either send a copy of the Notice to the beneficial owners or to provide Angeion with a list of beneficial owners who would then be mailed the Notice by Angeion.  *Id.*

On or about February 12, 2015, Angeion updated the Court and declared that 39,425 Notices had been mailed as a result of requests from brokers and other nominees, to be sent directly, or indirectly through the brokers and other nominees, to potential Class Members.  *Id.*, ¶4 Subsequently, on or about March 17, 2015, Angeion mailed an additional 12,437 copies of the Notice by First-Class mail, based on a request received from Scottrade on March 10, 2015.  *Id.* Through August 27, 2015, as a result of requests from brokers and other nominees, Angeion sent, in total, 56,938 Notices, directly or indirectly to potential Class Members.  *Id.*, ¶¶4-5.

Settlement Class Members were initially notified that written requests for exclusion from the Settlement Class were to be mailed, postmarked no later than January 29, 2015.  *Id.*, ¶9.  Angeion has monitored all mail that has been received.  *Id.*  As of August 27, 2015, Angeion received one timely filed request for exclusion from the Settlement Class postmarked no later than January 29, 2015 and two late-filed requests for exclusion (one postmarked February 2, 2015 and the other postmarked March 25, 2015).  *Id.*  On April 29, 2015, the Court granted Plaintiffs' Counsel's request that the late filed request for exclusion be accepted.  *Id.*[5]

---

[5] Two of the requests for exclusion are procedurally defective.  One request does not appear to have a Recognized Loss and the other did not identify the number of shares of stock for which exclusion is being requested and did not provide any transaction information or evidence that the person is even a Class Member.

Settlement Class Members were also initially notified that objections were to be delivered no later than January 29, 2015.  *Id*., ¶10.  As of August 27, 2015, Angeion has received one timely objection to the settlement.  *Id*.[6]  On February 17, 2015, the Court denied this objection.  *Id*.[7]  As of August 27, 2015 Angeion has received 2,256 paper claims and 86 electronic files containing approximately 3,189 individual claims, for a total of approximately 5,445 claims filed to date.  *Id*., ¶12.[8]

There has not been any objection to the Plan of Allocation, Application for Attorneys' Fees and Reimbursement of Expenses and Lead Plaintiff Awards.  The objection and exclusions received indicate an overall favorable response from the Class.  A small number of objections may "be

---

[6]  The Objection was defective.  While it purports to be submitted on behalf of a Fuqi Investor Group comprised of 39 members, it is not signed by 39 investors, nor are 39 investors identified.  Instead, only eight purported investors are listed, two of which only provide names and email addresses, and a third only provides an email address.  No information is provided about Fuqi stock ownership, including when they purchased shares, the number of shares purchased, the dates of purchase, the prices paid, or whether any or all of those shares were sold, when they were sold, and, if applicable, the sale prices.  In addition, the Objection provides no evidence showing that any of the members of this group purchased shares during the Class Period or suffered a loss from such purchases.  Without this information, clearly requested in the Notice, the Objection was defective.

[7]  The Objectors stated that before they supported the Settlement, they wanted Fuqi's financial statements released, but this Action did not seek the release of Fuqi financial statements.  The Objection also requested that U.S. based shareholders be given a buyout offer, but it provides virtually no details regarding that request.  Among other things, whether the proposed buyout is for current holders or some other group is not mentioned.  The Class here is comprised of a group of Fuqi purchasers during the designated Class Period.  If the requested buyout is for current holders, it would not be based on the damages suffered by the Class, which is what the Settlement seeks, but would just be a buyout of current Fuqi stock owners no matter what price was paid for those shares, even if the holder did not have a loss on the investment.  Plainly, such a requested buyout would not be a basis for settling the Class' claims.

If, however, the Objector is just making a general request for a larger recovery, none of the factors that are examined when evaluating a proposed settlement are considered in the Objection.  Most importantly, none of the risks of litigation, of obtaining a judgment or collecting on any judgment are considered.  If, for example, the Objector is suggesting some type of rescission for their stock purchases, that could only be obtained if Plaintiffs continued to litigate for years, went to trial and were able to get a judgment against some or all Defendants.  Continuing to litigate and the risks involved is one of the factors evaluated when determining if a settlement is fair, reasonable and adequate.  Here, the time and money it would take to litigate through trial (and possible appeals) to obtain a judgment, and the substantial risks involved in succeeding and collecting on a judgment, warranted reaching agreement at this time on the terms provided in the Stipulation of Settlement.

[8]  Because of an inquiry from a Class Member, Angeion checked its records and confirmed that it mailed the Notice to TD Ameritrade on December 12, 2014.  Ferrara Decl., ¶11.  Because of the date Scottrade requested Notices be mailed for its clients, Angeion also confirmed that it mailed the Notice to Scottrade on December 12, 2014.  Ferrara Decl., ¶4.

viewed as indicative of the adequacy of the settlement." *Wal-Mart*, 396 F.3d at 118 (citations omitted). The absence of opposition to the Settlement provides evidence of Class members' approval of its terms. *Id.* (citation omitted).

### 4. The Risk of Establishing Liability

In assessing the Settlement, the Court should balance the benefits afforded to the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463; *In re Veeco Instruments Sec. Litig.*, 05 MDL 01695, 2007 U.S. Dist. LEXIS 85629 (S.D.N.Y. Nov. 7. 2007), at *25. While Plaintiffs' Counsel believe that Plaintiffs could survive Defendants' motion to dismiss and motion for summary judgment and would have prevailed on Lead Plaintiff's motion for class certification, it is also clear that ultimate success is not assured, and this substantial settlement, when viewed in light of the risks of proving liability, proving damages and enforcing and collecting a judgment, is undoubtedly fair, adequate and reasonable. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (when evaluating securities class action settlements, courts have long recognized such litigation to be "'notably difficult and notoriously uncertain'") (quoting *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973)); *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971) ("Stockholder litigation is notably difficult and unpredictable.").

Securities litigation generally involves complex issues of fact and law, and this case is no exception. The principal claims in this Litigation are based upon §10(b) of the Exchange Act and §11 of the Securities Act. In order to establish liability under §10(b), Plaintiffs would bear the burden of proving, *inter alia*, that Defendants acted with scienter. The possibility of Plaintiffs proving scienter was made more problematic because of Defendants' lack of Fuqi stock sales during the Class Period, which undercuts the inference of scienter. *See In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1425 (9th Cir. 1994) (granting defendants' motion for summary judgment, in part,

finding that the officers' minimal sales of stock negated the inference of scienter).  Defendants contended a profit motive did not exist, which would make it difficult for Plaintiffs to prove their case.  Based on the documents reviewed and interviews conducted, and the mediation discussions, the evidence did not uniformly and definitively support Plaintiffs' theory of liability.

As to the Securities Act claims, Defendants contended that they had disclosed the problems Fuqi had with its internal controls prior to the Secondary Offering.  They also would have contended that at the time of the Secondary Offering only the first quarter of 2009 financials had been released and that any restatement applicable to that one quarter was not material.  In any event, Defendants disputed that the decline in its stock price was caused by the announcement of the restatement but was instead related to its earnings announcement.

These risks would be heightened by the problems, as described above, with obtaining discovery of a Chinese company and of Chinese witnesses.  The proposed Settlement avoids having to resolve these liability issues and the risks of being unable to take full discovery in China.

### 5.    The Considerable Risk of Establishing Damages

Even if liability was established, Lead Plaintiff also faced substantial risk in proving the existence and the amount of damages.  *See In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at *11-12 (S.D.N.Y. Sept. 26, 2003) (noting difficulty of proving damages in securities cases).  Lead Counsel, with the assistance of their damages consultant, calculated the damages suffered by the Class attributable to the alleged misstatements and omissions.  This figure assumes that every element of the Class' damages theory is accepted by a jury as being correct and recoverable.  As such, its viability as an actual calculation for damages could be affected by many factors that may arise in the Action, such as Defendants' ability to establish "negative causation."  If a defendant can prove that the decline in the value of the

security in question was not caused by the material omissions or misstatements, such portion of damages shall not be recoverable. *See, e.g.,* 15 U.S.C. §77(e).

Indeed, Defendants vigorously disputed Lead Plaintiff's allegations that the Company's stock price declined because of any of the alleged misstatements and/or omissions. Rather, Defendants claimed that any price decline regarding the Company's restatement announcement was connected to its earnings announcement which was released at the same time. While Lead Counsel disagreed with Defendants' argument, the earnings announcement may have contributed to the Company's stock price decline, and thus, a significant portion of Lead Plaintiff's claimed damages may have been difficult to prove. As to damages relating to the Company's cash transfers, Defendants maintained that any such damages were minimal.

The determination of damages in this litigation is a complex matter which would require the presentation of expert testimony. As a result, the Class would ultimately face a "battle of experts" – a battle in which no party is ever assured to prevail. While Lead Counsel believe that reliable and convincing expert testimony can be provided on the damages question, and that a judgment could ultimately be obtained for the full amount of damages available under the law, meaningful obstacles remained. First, the Court must determine that Plaintiffs' damages model is admissible and only then may a jury determine whether Plaintiffs' or Defendants' model is more accurate. The Class is by no means assured of a ruling in their favor. *See, e.g.*, *Carpe v. Aquila, Inc.*, No. 02-0388-CV-W-FJG, 2005 U.S. Dist. Lexis 44667, at * 14 (W.D. Mo. Mar. 23, 2005) (granting defendants' motion to exclude plaintiffs' expert testimony); *Kaufman v. Motorola, Inc.*, No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627, at *7 (N.D. Ill. Sept. 21, 2000) (precluding, in part, plaintiffs' expert testimony). It is then possible that, in the unavoidable "battle of experts," a jury might disagree with the Class'

expert, or merely find Defendants' expert more persuasive.[9]

Because of these considerations, the likelihood of proving damages, even assuming the Class prevailed on the liability issue, is somewhat difficult.  *See Veeco*, 2007 U.S. Dist. LEXIS 85629, at *29.  As a result, this factor also weighs in favor of the Settlement.

### 6.      The Risks of Maintaining the Class Action Through Trial

Had the Settlement not been reached, there is no assurance that Lead Plaintiff's anticipated motion for class certification would be granted and/or that Class status, if granted, would be maintained, because a court may exercise its discretion to re-evaluate the appropriateness of class certification at any time.  *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."); *see also Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001) (decertifying class, finding proposed class representatives did not sufficiently remain apprised of status and claims of litigation).  Here, it was expected that Defendants would challenge the class certification motion and they would likely have attempted to prevent the proposed Class representatives from being certified, especially attempting to challenge the representative for the Securities Act claims.  Even if the class certification motion was granted, Defendants would likely have continued to attempt to try to find infirmities with the class representatives and remove them from that role.  The Settlement avoids any uncertainty with respect to these issues.

### 7.      The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

---

[9]  *See, e.g.*, *PaineWebber*, 171 F.R.D. at 129 (noting unpredictability of outcome of battle of damage experts); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions."), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). "[T]he Court is not to compare the terms of the Settlement with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion." *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *33. The Court need only determine whether the Settlement falls within a "'range of reasonableness.'" *PaineWebber*, 171 F.R.D. at 130 (citation omitted); *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("[I]n any case there is a range of reasonableness with respect to a settlement."). *See also Indep. Energy*, 2003 U.S. Dist. LEXIS 17090, at *13 (noting few cases tried before jury result in full amount of damages claimed). The Second Circuit has described the "'range of reasonableness'" as "'a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in . . . any litigation.'" *Wal-Mart Stores*, 396 F.3d at 119 (quoting *Newman*, 464 F.2d at 693). According to estimates by Lead Plaintiff's damages consultants, this recovery represents approximately 4.8 – 6.1% of the Class' maximum provable damages, depending on certain liability issues Plaintiffs could or could not prove at trial.[10] Thus, this Settlement in well within the range of the average recovery in shareholder litigation. *See In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895, 2011 U.S. Dist. LEXIS 53007 (S.D.N.Y. May 13, 2011), at *15 (average settlement in securities class actions over the past decade ranged from 3% to 7% of class members' estimated losses) (citation omitted); Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2011 Review and Analysis*, at 7

---

[10]   Lead Plaintiff's damages consultants have estimated the maximum provable damages to be in the range of approximately $124.2 – 154.9 million.

(Cornerstone Research 2012) (the median recovery rate of "estimated damages" for securities cases averaged 2.1% in 2011); *see also* Stephanie Plancich, Ph.D., Brian Saxton, Svetlana Starkyh, *Recent Trends in Shareholder Class Actions:  Filings Return to 2005 Levels as Subprime Cases Take Off; Average Settlements Hit New High*, at 14 (NERA 2007) (median ratio of settlements to investor losses in 2007 was 2.4%).[11]

Moreover, the amount of the Settlement is particularly noteworthy given that Fuqi and several of the Individual Defendants were based in China with all their assets in China.  As stated above, recoveries in securities actions against defendants from China have been lower than in cases without Chinese defendants.

Finally, in analyzing the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road, without any further risk to the Class.  *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 5575, 2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006), at *44 (where the settlement fund is in escrow and earning interest for the class, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").  This case has been pending for more than five years, and could be expected to last additional years had the Settlement not been reached. Moreover, Lead Plaintiff would likely have difficulty trying to enforce and collect any judgment from Fuqi and would likely need to try to enforce any judgment in Chinese courts, which could prove to be difficult if not impossible.  In light of these issues, the fairness of this substantial settlement is clearly apparent.  *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002).

---

[11]  Not surprisingly, Defendants calculated damages, if any, at significantly less than Lead Plaintiff, given their defenses, including "negative causation".

### 8.      Defendants' Ability to Withstand a Greater Judgment

Defendants' ability to withstand a greater judgment had little bearing on settlement negotiations as the only realistic funding source for collection of any potential judgment in the United States is the Company's insurance.  Courts have found that "this factor alone does not prevent the Court from approving the Settlement where the other *Grinnell* factors are satisfied." *Telik*, 576 F. Supp. 2d 570, 580 (citations omitted).  As noted above, Defendants are citizens and residents of the PRC and, therefore, virtually immune from judgment in the United States. While the Underwriter Defendants have the ability to pay a judgment, they also have strong defenses, and they may have been able to avoid all liability.  Recovery from individuals is always difficult in cases of this nature, and while insurance would provide some coverage for the Individual Defendants, if the case were to go to trial and a judgment obtained, much, if not all, of the insurance would be expended.

Accordingly, Lead Counsel submit that this Court should find that the *Grinnell* factors, taken together, weigh in favor of the Settlement and that the Settlement should be approved.

### III.     THE PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND IS FAIR AND REASONABLE

"When evaluating the fairness of a Plan of Allocation, courts give weight to the opinion of qualified counsel." *Advanced Battery*, 2014 U.S. Dist. LEXIS 39575, at *26.  A Plan of Allocation "need have only a reasonable, rational basis" where it is "formulated by competent and experienced class counsel." *Global Crossing*, 225 F.R.D. at 462 (quotation omitted); *Am. Bank Note*, 127 F. Supp. 2d at 429-30 (same).

The Plan of Allocation ("Plan") provides that the Net Settlement Fund will be distributed to Authorized Claimants, *i.e.*, members of the Class who submit timely and valid Proofs of Claim.  (Dkt. No. 92 #5, Ex. A1of Ex. 1, at 22-27.)  The Plan treats all Class Members in a similar manner:  everyone

19

who submits a valid and timely Proof of Claim, and does not exclude himself or herself from the Class, receives a *pro rata* share of the Net Settlement Fund in the proportion that the Authorized Claimant's Recognized Loss Claim bears to the total of all Recognized Losses.  (*Id.*)

For losses to be compensable damages under the federal securities laws, the disclosure of the allegedly misrepresented information must be the cause of the decline in the price of the security. *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992) ("To establish loss causation a plaintiff must show, that the economic harm that it suffered occurred as a result of the alleged misrepresentations.").  In this case, Plaintiffs allege that Defendants issued false statements and omitted material facts, from May 15, 2009, and March 27, 2011, inclusive, including materially false and misleading statements in connection with the Secondary Offering, that inflated the price of Fuqi common stock.  Plaintiffs also allege that the corrective information, on November 9, 2009, March 16, 2010 and March 28, 2011, impacted the market price of Fuqi common stock in a statistically significant manner and removed the alleged artificial inflation from the stock price on those days.  (*Id.*)  Accordingly, in order to have a compensable loss, Authorized Claimants must have purchased or otherwise acquired Fuqi common stock during the Settlement Class Period and held until the release of the corrective information. (Dkt. No. 29-2 at A1-18.)

This Plan reflects Plaintiffs' damages expert's analysis undertaken to that end, including a review of publicly available information regarding Fuqi, and a statistical analysis of the price movements of Fuqi common stock and the price performance of relevant market and peer indices during the Settlement Class Period.  The calculations made pursuant to the Plan, weigh the claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund.  (*Id.*) The "Recognized Loss," as used in the Plan of Allocation, is not market loss.  Rather, the Plan of Allocation ensures an equitable *pro rata* distribution of the Net Settlement Fund among all Authorized Claimants based solely on when they purchased and sold shares, taking into account the relative amounts

20

of artificial inflation prevailing during the Class Period.  "Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach." *Global Crossing*, 225 F.R.D. at 462 (citation omitted).  Plaintiffs, thus, submit that the Plan is fair and reasonable and should be approved.

## IV.    THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23

To certify a class, the Court must determine whether four threshold requirements of Fed.R.Civ.P. 23(a) ("Rule 23(a)") are met including (1) numerosity, (2) commonality, (3) typicality and (4) adequacy of representation. *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997).  The action must also be maintainable under Fed.R.Civ.P. 23(b)(1), (2), or (3). ("Rule 23(b)").  Here, the proposed Settlement Class meets all the requirements of Rule 23(a) and Rule 23(b)(3).[12]

### A.    The Numerosity Requirement is Satisfied

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable.  *See Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 54 (S.D.N.Y. 1993).  Here, throughout the Class Period, there were millions of shares of Fuqi common stock traded in the United States.  Beneficial holders of the shares are believed to number in the tens of thousands and are geographically located throughout the United States, making joinder impracticable. Thus, Rule 23(a)(1) is satisfied.  *See Penthouse*, 2013 U.S. Dist. LEXIS 63065, at *12 (numerosity satisfied where there were 1,245 class members).

### B.    Plaintiffs and the Proposed Class Share Common Questions of Law And Fact

The commonality requirement of Rule 23(a)(2) and typicality requirement of Rule 23(a)(3) are closely linked and evaluated on much the same basis. *See, e.g., In re Prudential Ins. Co. of Am.*

---

[12] The Proposed Settlement Class include the Subclass of all those who purchased or otherwise acquired Fuqi common stock pursuant, or traceable, to the Secondary Offering.

*Sales Practice Litig.*, 148 F.3d 283, 311 (3d Cir. 1998) ("The concepts of commonality and typicality are broadly defined and tend to merge."). The threshold for satisfying these two requirements is not high. *McManus v. Fleetwood Enters.*, 320 F.3d 545, 548 n.2 (5th Cir. 2003). The commonality inquiry "asks if the named plaintiffs' grievances share a common question of law or of fact with those of the proposed class … ." *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 122 (S.D.N.Y. 2001) (quotation omitted). Typicality is satisfied if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-North Commuter R.R. Co*., 267 F.3d 147, 155 (2d Cir. 2001) (citation omitted); *see also In re Blech Sec. Litig.*, 187 F.R.D. 97, 104 (S.D.N.Y. 1999) (allegations of a common course of conduct arising out of a single set of operative facts satisfies the commonality requirement).

The Complaint asserts the same claims on behalf of all Class Members. All Class Members are purchasers of Fuqi common stock during the Class Period, and allegedly sustained injury due to the artificial inflation of the price of those securities that was caused by Defendants' alleged material misrepresentations throughout the Class Period. In addition, all Class Members make the same legal claims under the federal securities laws. Plaintiffs have alleged common issues of fact and law that affect all Class Members, satisfying the commonality requirement of Rule 23(a)(2). *See, e.g., In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 279 (S.D.N.Y. 1999) (commonality satisfied "[b]ecause a single, continuous conspiratorial artifice is alleged, the relevant proof will not vary among class members, and the case presents a fundamental [important] question . . . to all class members") (citation omitted).

      **C.**     **Plaintiffs and Lead Counsel Will**
               **Adequately Represent the Proposed Class**

The adequacy requirement of Rule 23(a)(4) involves the inquiry as to whether: (1) Plaintiffs' interests are antagonistic to the interests of the other members of the Class; and (2) Plaintiffs' counsel are qualified, experienced, and capable of conducting the litigation. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Both elements are present in this case.

No conflicts exist between Plaintiffs and the members of the Class. Plaintiffs' interests are aligned with those of the Class as the factual and legal claims of Plaintiffs and the Class arise from the same nexus of operative facts and course of conduct by Defendants. "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Amchem*, 521 U.S. at 625-26 (citation omitted); *Penthouse*, 2013 U.S. Dist. LEXIS 63065, at *13 ("Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(4) because there is no evidence that the named Plaintiffs' and Class Members' interests are at odds.") (citation omitted). Plaintiffs, like all Class Members, purchased Fuqi common stock at artificially inflated prices during the Class Period or in the Secondary Offering as a result of Defendants' alleged materially false and misleading statements and was damaged thereby. Plaintiffs have retained counsel who have successfully prosecuted numerous securities and other complex class actions in courts throughout the United States. *See* Levit Decl., Ex. 2 & Ex. A thereto; Ex. 3 & Ex. A thereto; Ex. 4 & Ex. A thereto. Lead Counsel has vigorously prosecuted the Action. Thus, Plaintiffs are adequate representatives of the Class, and Lead Counsel is qualified, experienced, and capable of prosecuting the Action, in satisfaction of Rule 23(a)(4).

### D.    The Proposed Class Satisfies the Requirements of Rule 23(b)(3)

In addition to the four requirements of Rule 23(a), a class must also satisfy one of the three subparts of Rule 23(b). Plaintiffs seek class certification under Rule 23(b)(3), which requires that:

> the court find[] that the questions of law or fact common to the members of the class
> predominate over any questions affecting only individual members, and that a class

23

action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

### 1.      Common Questions of Law and Fact Predominate

Predominance "is a test readily met in certain cases alleging consumer or securities fraud . . . ." *Amchem*, 521 U.S. at 625.  Because the issue of liability in this case is common to all members of the Class, the predominance requirement of Rule 23(b)(3) is satisfied.  Plaintiffs allege that Defendants engaged in a common course of fraudulent conduct causing the artificial inflation of the price of Fuqi common stock.  Proof of that common course of conduct relates to Defendants' liability as to all Class Members,  each Class Member is similarly situated and common questions predominate over individual questions.  *See Cromer*, 205 F.R.D. at 127 (finding predominance because "[t]he proof for the claims of misrepresentation or omission, materiality, and . . . scienter are all based on a common nucleus of facts and a common course of conduct."); *Blech*, 187 F.R.D. at 107 (same).

In this case, common questions predominate over individual questions.  The common questions include: (1) whether the federal securities laws were violated by Defendants' acts and omissions; (2) whether statements made by Defendants during the Class Period misrepresented and/or omitted material facts about the business and operations of Fuqi; (3) whether the market price of Fuqi common stock was artificially inflated during the Class Period due to the material misrepresentations and omissions; and (4) to what extent the members of the Settlement Class have sustained damages and the proper measure of damages.

### 2.      A Class Action is Superior to Multiple Individual Actions

Rule 23(b)(3) also requires that the class action be "superior to other available methods for fair and efficient adjudication of the litigation." Fed. R. Civ. P. 23(b)(3). Courts have found that the superiority requirement is satisfied where:

> The potential class members are both significant in number and geographically dispersed. The interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions.

*Cromer*, 205 F.R.D. at 133.

Here, the utility of presenting the claims asserted through the class action method is substantial since the Class Members who have been injured number in the thousands, but most have not been damaged to a degree that would induce them to institute litigation on their own behalf. *See Blech*, 187 F.R.D. at 107 (cost of pursuing individual litigation not feasible). Further, without the settlement class device, Defendants could not obtain a Class-wide release, and little incentive to enter into the Settlement. The settlement also enables administration of the Settlement in an organized and efficient manner.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court issue the proposed Final Judgment approving the Settlement, finally certifying the Class for Settlement purposes, and approving the Plan of Allocation of the Net Settlement Fund.

Dated: August 31, 2015                    Respectfully submitted,

**ABRAHAM, FRUCHTER & TWERSKY, LLP**

By: /s/Lawrence D. Levit
    Mitchell M.Z. Twersky (MT-6739)
    Lawrence D. Levit (LL-9507)
    One Penn Plaza, Suite 2805
    New York, NY 10119
    Telephone: (212) 279-5050
    Facsimile: (212) 279-3655
    **Lead Counsel for Plaintiffs**